Lee Paul JOHNSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 10–02–015–CR.

Court of Appeals of Texas, Waco.

Oct. 30, 2002.

Rehearing Overruled Jan. 3, 2003.

Stan Schwieger, Law Office of Stan Schwieger, Waco, for Appellant.

John W. Segrest, McLennan County District Attorney, James Wiley, McLennan County Asst. District Attorney, Waco, for Appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

BILL VANCE, Justice.

This case concerns how the element "deadly weapon" in an aggravated assault offense should be alleged in an indictment, how that allegation relates to the State's burden of proof, and "variance" law. A jury convicted Lee Paul Johnson of aggravated assault against his wife and assessed punishment at fifty-five years in prison. TEX. PEN.CODE ANN. § 22.02(a)(2) (Vernon 1997).

Johnson contends on appeal that the indictment, by its express wording, limited the State to proof that the pocket knife that Johnson used was "manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury." He argues that because there was no proof of that, the evidence is legally insufficient to support a conviction. Alternatively, he argues that there is a fatal variance between the indictment and the evidence. Finding no error, we will affirm the judgment.

### Deadly Weapons

An aggravated assault may be committed by "us[ing] or exhibit[ing] a deadly weapon during the commission of the assault." *Id.* A deadly weapon is:

(A) a firearm or anything manifestly designed, made, or adapted for the pur-

pose of inflicting death or serious bodily injury; or

(B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury.

*Id.* § 1.07(a)(17)(A), (B) (Vernon 1997).

Prior to the enactment of the current definition of "deadly weapon" in 1974, objects under section 1.07(a)(17)(A) were called deadly weapons *"per se." Thomas v. State,* 821 S.W.2d 616, 619 (Tex.Crim. App.1991). Now, a more appropriate term might be deadly weapons "by design." *See id.* Whether an object is a deadly weapon under subsection (A) is determined by the physical characteristics of the object. *McCain v. State,* 22 S.W.3d 497, 502 (Tex.Crim.App.2000). Furthermore, if an object has an obvious purpose apart from causing death or serious bodily injury, it cannot be a deadly weapon under subsection "A." *Id.* Thus kitchen knives, utility knives, butcher knives, straight razors, and eating utensils are not subsection "A" deadly weapons. *Id.* at 502–03. Under subsection "A," the State must prove at trial that the object is either a firearm or was "manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury." *Thomas,* 821 S.W.2d at 620.

Subsection "B," on the other hand, classifies as a deadly weapon an object that, in the manner in which it is used or intended to be used, is capable of causing death or serious bodily injury. The defendant need not intend to cause death or serious bodily injury, only to use or intend to use the object in a manner that is capable of such a result. *McCain,* 22 S.W.3d at 503. Thus, conduct that threatens deadly force may be sufficient even though the defendant has no intention of actually using deadly force. *Id.* In *McCain,* the Court found that a butcher knife, carried in the defendant's back pocket and visible to the

victim of the aggravated robbery, was a deadly weapon because the defendant may have "intended" to use it in a manner capable of causing death or serious bodily injury, and because it was exhibited by being partially exposed. *Id.* As with subsection "A," the State must prove the requirements of subsection "B," *i.e.,* a deadly weapon by usage. *Thomas,* 821 S.W.2d at 620.

### Legal Sufficiency of the Evidence

█ The indictment alleged that Johnson "cause[d] bodily injury [to his wife] by cutting her neck with a knife, and [Johnson] did then and there use or exhibit a deadly weapon, to-wit: a knife, during the commission of said offense." He did not object to it. In his first issue, Johnson argues, without supporting authority, that by referring to the use only of "a knife," and omitting any reference to the language in subsection "B," the indictment of necessity alleges a violation of section 1.07(a)(17)(A). And because there was no evidence that the pocket knife used by Johnson was "manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury," there was no evidence of a deadly weapon. The State counters that the indictment is broadly worded and tracks the statute. Therefore, the State contends, the indictment encompasses both subsection "A" and subsection "B."

At the charge conference, this exchange occurred:

COURT: Let me just point out something that might be a little interesting. The allegations in the indictment allege a knife, a deadly weapon, they don't allege in the manner and means for which it was used. So manner and means is out. I have never seen an indictment that alleged—other than a per se firearm that didn't allege the manner and means of it's use.

DEFENSE: That's correct.

COURT: What does the State have to say about that?

STATE: Well, your Honor, I would have to go back and look at my notes as far as comparing the indictment.

COURT: I have never seen an indictment that didn't allege that.

DEFENSE: Your Honor, under the penal code, section—under definitions, section 17 which says deadly weapon. There are two means of alleging deadly weapon, one is a firearm, and the other one is anything other [sic] by it's manner and means. This way we are equating knife with firearm. We are saying it is a deadly weapon per se.

COURT: We are not saying that.

DEFENSE: The indictment certainly does.

COURT: A deadly weapon means a firearm, or anything manifestly designed or adapted for the purpose of inflicting death or serious bodily injury, or anything in the manner and means. So it's not a firearm, that's out.

DEFENSE: That's correct.

COURT: Anything in the manner of it's use or intended use is capable of causing death, that's out. That leaves anything only manifestly designed, made or adapted for the purpose of inflicting death or serious bodily injury.

DEFENSE: That's correct, and this case is saying *McCain v. State*, that is 22 S.W.3d 497, basically says that kitchen knife, utility knife, street [sic] razors, eating utensils, and such, that are manifestly designed for other purposes can become deadly weapons in the manner and means.

COURT: It is a question of fact for the jury. I just wanted to add that, it may be a real big problem. Angel, do you have any objections?

DEFENSE: Your Honor, we still go back to the definition of deadly weapon. I don't know if we can charge on deadly weapon, when there is actually no evidence of a deadly weapon.

COURT: Well, I don't know whether there is any evidence, the only evidence is Bob Fuller testified that a knife—

STATE: That would be—Brian Reynolds.

COURT: There is evidence there. That complicated their case about a hundred fold, the way they have made their allegations.

DEFENSE: But, Reynolds, I think, corrected himself, and said basically that a knife was like a gun, which is wrong.

COURT: That is some evidence. It may not be credible, but it is some evidence of a deadly weapon.

DEFENSE: The second thing we have is, there is actually no definition, or no description of the weapon. We don't have it's size, whether it is sharp, dull, serrated.

COURT: You will be able to argue all of that to the jury.

. . .

DEFENSE: My objection is they failed to prove that it was a deadly weapon, therefore—

COURT: They shouldn't charge it.

DEFENSE: You shouldn't charge on a deadly weapon. We should just charge on regular assault.

. . .

COURT: I overrule the objections. . . .

To further complicate matters, even though the court said "[a]nything in the

manner of it's use or intended use is capable of causing death, that's out," the court defined "deadly weapon" in the charge, without objection, according to subsection "B" and omitted any reference to the definition in subsection "A."

Regardless of whatever confusion may have existed at trial, we have rejected Johnson's argument in a case with strikingly similar facts. In *Wade v. State*, the indictment alleged an assault by "caus[ing] bodily injury to [the victim] by striking her, and did then and there use a deadly weapon, to-wit: a knife." *Wade v. State*, 951 S.W.2d 886, 888 (Tex.App.-Waco 1997, pet. ref'd). Wade complained that the indictment did not allege that he used the knife to inflict the bodily injury. *Id.* We explained:

> Article V, § 12(b) of the Texas Constitution defines an "indictment" as "a written instrument presented to a court by a grand jury charging a person with the commission of an offense." TEX. CONST. art. V, § 12(b); *Cook v. State*, 902 S.W.2d 471, 477 (Tex.Crim.App. 1995); *Studer v. State*, 799 S.W.2d 263, 265 (Tex.Crim.App.1990). Thus, to comprise a valid indictment within the definition provided by the Constitution, an indictment must charge: (1) a person; (2) with the commission of an offense. *Cook*, 902 S.W.2d at 477. An indictment may properly charge the offense of aggravated assault by alleging (1) the defendant (2) intentionally, knowingly, or recklessly (3) caused bodily injury to another and (4) used a deadly weapon. TEX. PENAL CODE ANN. §§ 22.01(a)(1), 22.02(a)(2) (Vernon 1997 & Supp.2002); *Butler v. State*, 928 S.W.2d 286, 288 (Tex.App.-Fort Worth 1996, pet. ref'd). Wade contends the indictment alleges only simple assault because it alleges he struck Schulz "and" he used a deadly weapon. Under Wade's construction, the indictment must have alleged that he

caused Schulz's bodily injury "by" using a deadly weapon. However, bodily injury caused by a deadly weapon is not a necessary element of aggravated assault. Rather, the defendant must intentionally, knowingly, or recklessly cause bodily injury to another *and* use a deadly weapon during the assault. Therefore, the failure to allege that the deadly weapon caused the bodily injury does not render the indictment insufficient to charge aggravated assault. The indictment in this case properly charged Wade because it alleged all the essential elements of aggravated assault. *Butler*, 928 S.W.2d at 288.

> Moreover, as a general rule, an indictment in the language of the statute creating and defining the charged offense will be sufficient. *Beck v. State*, 682 S.W.2d 550, 554 (Tex.Crim.App.1985). The indictment charging Wade was sufficient because it tracked the language of the statute creating and defining aggravated assault.

*Id.* at 888–89. Other courts have impliedly approved an indictment which alleges the elements of aggravated assault in the language of the statute. *E.g., Duvall v. State*, 59 S.W.3d 773, 776 (Tex.App.-Austin 2001, pet. ref'd) (aggravated assault); *Garcia v. State*, 17 S.W.3d 1, 5 (Tex.App.-Houston [1st Dist.] 1999, no pet.) (aggravated assault); *Bethel v. State*, 842 S.W.2d 804, 806–07 (Tex.App.-Houston [1st Dist.] 1992, no pet.) (indictment adequate which alleged use of a hammer and an unknown weapon); *see also Gray v. State*, 51 S.W.3d 856, 858 (Tex.App.-Texarkana 2001, pet. dism'd improvidently granted) (aggravated robbery).

Because Johnson's theory fails about why the evidence is legally insufficient under the indictment, we overrule this issue.

### *Variance*

■■■ Johnson's second issue is that there was a "variance" between the offense

as alleged in the indictment and the proof at trial. While some courts have treated this issue as one concerning "notice," the Court of Criminal Appeals has routinely reviewed it as a sufficiency-of-the-evidence issue. *Gollihar v. State*, 46 S.W.3d 243, 247 (Tex.Crim.App.2001). Sufficiency of the evidence concerns due process. *Id.* at 245–46. Variances that are not prejudicial to the substantial rights of the defendant are "immaterial" and do not constitute insufficient evidence. *Id.* at 247–48. "Immateriality" is determined by examining whether the indictment (1) sufficiently informs the defendant of the charge against him to allow him to adequately prepare a defense, and (2) is sufficiently clear about what criminal conduct it is referring to, such that the defendant could not be subjected to prosecution for the same offense under a differently-worded indictment. *Id.* at 248. A "material" variance is also called a "fatal" variance. *Id.* at 249.

Because of our resolution of Johnson's first issue, his second issue fails. The evidence at trial showed that he cut his wife's throat with a knife. This proof shows that he committed an aggravated assault while using or exhibiting a deadly weapon, which is what is alleged in the indictment. In addition, the indictment sufficiently informed Johnson about the charge against him and was clear enough about the offense that he would not be subjected to double jeopardy by a differently-worded indictment about the same offense. Thus there is no variance. We overrule this issue.

### Conclusion

Having overruled Johnson's two issues, we affirm the judgment.