Trever **ROBERTSON**, Appellant,

v.

The **STATE** of Texas, Appellee.

Nos. 10–02–00283–CR, 10–02–00284–CR.

Court of Appeals of Texas, Waco.

May 12, 2004.

808

Stan Schwieger, Attorney At Law, Waco, for Appellant/Relator.

Robert W. Gage, Freestone County District Attorney, Fairfield, for Appellee/Respondent.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

VANCE, Justice.

Trever Robertson was charged by an indictment in cause number 02–089–CR (our cause number 10–02–00283–CR) with possession of methamphetamine with intent to deliver, four grams or more and less than 200 grams. TEX. HEALTH & SAFETY CODE ANN. §§ 481.103, 481.112 (Vernon

2003 and Supp.2004). The indictment charged that the offense occurred within 1,000 feet of a playground at a Dairy Queen, apparently an allegation of a drug-free zone. *Id.* § 481.134 (Vernon Supp. 2004). It also alleged, for purposes of an "affirmative finding" that he used a deadly weapon—a knife—during the offense or flight.[1] TEX.CODE CRIM. PROC. ANN. art. 42.12, § 3g(a)(2) (Vernon Supp.2004).

In cause number 02–090–CR (our cause number 10–02–00284–CR), Robertson was indicted for possession of cocaine, less than one gram. TEX. HEALTH & SAFETY CODE ANN. §§ 481.103, 481.115 (Vernon 2003 and Supp.2004).

After the trial court denied a motion to suppress the evidence in each case, Robertson pled not guilty to each indictment. The offenses were tried together and a jury found him guilty of both. The court then sentenced him to fifteen years in prison for the methamphetamine offense and two years in a state jail facility for possession of cocaine and entered a deadly weapon finding in each case.

On appeal, Robertson asserts that the methamphetamine offense should not stand because (1) the evidence of the deadly weapon is legally insufficient, (2) the evidence of intent to deliver is legally insufficient, and (3) the trial court should have suppressed the evidence. In the cocaine offense appeal, he asserts only the suppression issue.

## THE OFFENSES

Shortly after midnight on May 15, 2002, Fairfield Officer Steven Oates saw a vehicle travelling East on Highway 84. Following it, he observed several traffic violations. When he requested registration information, the license plates were reported to be assigned to another vehicle.[2] Oates then saw the vehicle stop, the driver and passenger exchange places, then resume traveling on Highway 84. After observing additional traffic violations, Oates stopped the vehicle and found Myron Hackett to be the driver and Robertson a passenger. Oates flagged down DPS Trooper Mark Gerik, who looked in the car and told Oates that a "honey blunt wrapper"—described as commonly used to roll marihuana—was in plain view. Oates ordered Robertson to empty his pockets, the contents of which included a switchblade knife[3] with a white residue on the tip and $460 in cash. When Oates conducted a strip-search of Robertson at the jail, he discovered marihuana, cocaine, methamphetamine, and an "unknown substance."

## LEGAL SUFFICIENCY OF THE EVIDENCE OF INTENT TO DELIVER

We review this issue first because it offers the greatest potential relief.

■ The standard of review is well settled: we view all the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Parker v. State,* 119 S.W.3d 350, 354 (Tex. App.-Waco 2003, pet. ref'd) (citing *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).

■ Robertson does not challenge the sufficiency of the evidence as to his possession of the methamphetamine. He challenges only the legal sufficiency of the

---

1. The jury was not charged on either the playground or the deadly weapon allegation.

2. This was later discovered to be an error.

3. A prohibited weapon, the possession of which subjected Robertson to arrest. TEX. PEN.CODE ANN. § 46.05(1)(5) (Vernon Supp. 2004).

evidence to support a finding of intent to deliver. He concedes that intent to deliver may be proven by circumstantial evidence, considering the following factors (not an exclusive list):

- the nature of the location where the defendant was arrested;
- the quantity of controlled substance in the defendant's possession;
- the manner of packaging;
- the presence of drug paraphernalia (for either drug use or sale);
- the defendant's possession of large amounts of cash; and
- the defendant's status as a drug user.

*Bryant v. State,* 997 S.W.2d 673, 675 (Tex. App.-Texarkana 1999, no pet.). Using these, he argues that the location of his arrest was not an inherently suspicious place; that the amount of methamphetamine in his possession is not sufficient to support a finding of intent to deliver; that there was an absence of paraphernalia; that the substance was in a single package; and that the amount of cash, $460, does not support the finding.

The State correctly says that not all the quoted factors must be present. It says the evidence is legally sufficient because of the variety of drugs Robertson possessed, the amount of cash, the presence of the switchblade knife, the quantity of methamphetamine (too large for a single use), and the lack of paraphernalia to ingest the substance. The State also points to Officer Oates' testimony that the amount of methamphetamine, the absence of items with which to use methamphetamine, and the variety of drugs in Robertson's possession indicated that the methamphetamine was possessed for sale.

■ The Court in *Jackson* held that "the critical inquiry on review of the suffi-

ciency of the evidence to support a criminal conviction [is] ... whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson,* 443 U.S. at 318, 99 S.Ct. at 2788–89. The factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution. *Id.* at 319, at 2789. The criterion thus impinges upon "jury" discretion only to the extent necessary to guarantee the fundamental protection of due process of law. *Id.* Thus, our task is to insure the rationality of the factfinder. *Moreno v. State,* 755 S.W.2d 866, 867 (Tex.Crim.App.1988). The question is: viewing all the evidence in the light most favorable to the verdict, could a rational trier of fact have found *beyond a reasonable doubt* that Robertson had an intent to deliver the methamphetamine?

A survey of cases in which intent to deliver was the focus of a legal-sufficiency review suggests the nature of evidence required for the finding to be upheld.[4] *Branch v. State,* 599 S.W.2d 324, 325 (Tex. Crim.App.1980) (2,864 "hits" of heroin and $8,000 cash); *Ingram v. State,* 124 S.W.3d 672, 2003 WL 22249688 *3 (Tex.App.-Eastland 2003, no pet. h.) (more than 400 grams of methamphetamine, baggies, marihuana, items consistent with the manufacture of methamphetamine); *Taylor v. State,* 106 S.W.3d 827, 831 (Tex.App.-Dallas 2003, no pet.) (over 1.3 grams of crack cocaine, an amount consistent with approximately thirteen individual uses, several small plastic baggies; testimony that because of the cost and nature of the narcotic, it would be "very uncommon" for someone to purchase thirteen individual uses of crack cocaine and not have intent to sell at

---

4. Far more cases deal with the element of knowing possession than with the defendant's intent.

least a portion of those uses; a loaded assault rifle and revolver in plain view); *Simmons v. State,* 100 S.W.3d 484, 491 (Tex.App.-Texarkana 2003, pet. ref'd) (1,000 grams of cocaine and testimony that such an amount was "most definitely not for personal use. [But was] for sale"); *Bryant,* 997 S.W.2d at 675 (sixty-three rocks of crack cocaine (8.42 grams) packaged in individual baggies, testimony that the cocaine was in ten-dollar "rocks" and that their packaging indicated that the cocaine was intended for sale and distribution, rather than for individual use); *Wells v. State,* 968 S.W.2d 483, 484 (Tex.App.-Eastland 1998, no pet.) (more than one gram of methamphetamine, drug paraphernalia, dilutants, a large number of small plastic bags, and "gram scales"); *Williams v. State,* 902 S.W.2d 505, 507–08 (Tex.App.-Houston [1st Dist.] 1994, pet. ref'd) (near rundown motel that caters to prostitutes and drug users, a rock of cocaine sufficiently large to be split up into smaller pieces for sale, possession of a number of small plastic bags, scales commonly used for weighing cocaine and razor blades often used to cut smaller rocks off larger rocks for packaging and delivery, $600 in cash, appellant testified that he had just returned from a drug and alcohol counseling meeting); *Mack v. State* 859 S.W.2d 526, 528 (Tex.App.-Houston [1st Dist.] 1993, no pet.) (8.9 grams of crack cocaine (29 rocks), a known drug-dealing area, no paraphernalia for smoking or otherwise using cocaine, testimony that cocaine was "for resale"); *Gabriel v. State,* 842 S.W.2d 328, 331 (Tex.App.-Dallas 1992, no pet.) (defendant in a "crack" or "trap" house used to sell drugs, fifty-four baggies of crack cocaine packaged in a manner intended for resale, eighty dollars in bills consistent with the type of bills used to purchase cocaine); *Branch v. State,* 833 S.W.2d 242, 244 (Tex.App.-Dallas 1992, pet. ref'd) (17 packets of cocaine weighing less than 28 grams, $732 in cash); *Johnson*

*v. State,* 829 S.W.2d 836, 837 (Tex.App.-Dallas 1992, no pet.) (forty-six individual baggies of cocaine worth $920, known drug area, expert testimony that defendant was selling cocaine); *Smith v. State,* 737 S.W.2d 933, 941 (Tex.App.-Dallas 1987, pet. ref'd) ($7,000 cash, records of drug transactions, two Tupperware bowls containing a total of 1,331.09 grams of powder of which 349.51 grams were pure cocaine, a scale to weigh drugs, and several pieces of drug paraphernalia).

A review of the relevant factors in this case leads to the conclusion that there is marginal physical evidence from which a trier of fact could infer an intent to deliver methamphetamine:

1. the nature of the location where the defendant was arrested—he was in a vehicle stopped for traffic violations on a public street;

2. the quantity of controlled substance in the defendant's possession—he was in possession of 3.11 grams of methamphetamine, an unknown quantity of marihuana, .09 grams of PCP, and .07 grams of cocaine;

3. the manner of packaging—none of the drugs were packaged in a manner that indicated they were for sale;

4. the presence of drug paraphernalia (for either drug use or sale)—none was present other than the "honey blunt wrapper" commonly used to roll marihuana;

5. the defendant's possession of large amounts of cash—Robertson possessed $460 in cash, mostly in $20 bills; and

6. the defendant's status as a drug user—the evidence reflects that Robertson was a drug user.

What persuades us that the evidence is legally sufficient under the *Jackson* standard is Officer Oates' largely unchallenged testimony that these factors indicate pos-

session with intent to deliver. Although Robertson testified that he was not in possession of either the drugs or the knife, a rational jury could have disregarded that testimony. Thus, based on our survey of other cases and the evidence adduced in this case, we conclude that a rational trier of fact could have found beyond a reasonable doubt that Robertson intended to deliver the methamphetamine. *Parker*, 119 S.W.3d at 354. We overrule the second issue in the methamphetamine case.

## SUPPRESSION OF EVIDENCE

■ Robertson asserts in both appeals that the court erred in denying his motion to suppress the evidence seized as a result of his arrest without a warrant. The State responds by saying that he waived his complaint when his lawyer said "no objection" when the evidence was offered during the trial. We agree. *Williams v. State*, 834 S.W.2d 502, 506 (Tex.App.-Fort Worth 1992, pet. ref'd) ("However, when the defendant affirmatively asserts during trial that he has 'no objection' to the admission of the complained of evidence, he waives [his complaint about] the admission of the evidence despite the pretrial ruling."). Issue three in the methamphetamine case and the sole issue in the cocaine case are overruled.

## SUFFICIENCY OF THE EVIDENCE OF A DEADLY WEAPON

■ Robertson says the only evidence about the knife is that it was in his pocket. Thus, he says there is no proof that it was "deadly." The State says it is a deadly weapon *per se*[5] and points out that it was admitted into evidence.

■■ When a jury has convicted the defendant but he elects to have the court assess punishment, the court has the authority to make an affirmative deadly weapon finding on its own if the evidence supports such a finding. *Searcy v. State*, 115 S.W.3d 628, 630 (Tex.App.-Waco 2003, pet. ref'd). The court may do so regardless of whether the State re-offers the evidence admitted during the guilt-innocence phase. *Id.* Here, Robertson questions the legal sufficiency of the evidence to support the finding made by the court.

In the landmark case after the statute was amended in 1974, the Court of Criminal Appeals said:

> Clearly, bayonets, scimitars, and swords of various kinds are designed for such purpose and, therefore, could qualify as deadly weapons under Section 1.07(a)(11)(A). Kitchen knives, utility knives, straight razors, and eating utensils are manifestly designed and made for other purposes and, consequently, do not qualify as deadly weapons unless actually used or intended to be used in such a way as to cause death or serious bodily injury within the meaning of Section 1.07(a)(11)(B). Whether a particular knife is a deadly weapon by design, a deadly weapon by usage, or not a deadly weapon at all, therefore, depends upon the evidence.

*Thomas v. State*, 821 S.W.2d 616, 619 (Tex. Crim.App.1991).

We recently discussed the deadly weapon issue in *Nickerson v. State*, 69 S.W.3d 661, 670 (Tex.App.-Waco 2002, pet. ref'd):

> A deadly weapon is: "(A) a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or (B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." Tex. Pen.Code

---

5. Now called "deadly weapons by design." *Johnson v. State*, 91 S.W.3d 413, 415 (Tex.

App.-Waco 2002, pet. ref'd).

ANN. § 1.07(a)(17) (Vernon 1994). Generally, a knife is not a deadly weapon by design. *See Thomas v. State,* 821 S.W.2d 616, 620 (Tex.Crim.App.1991); *Wade v. State,* 951 S.W.2d 886, 892 (Tex. App.-Waco 1997, pet. ref'd); *see also Davis v. State,* 22 S.W.3d 638, 641 (Tex. App.-Waco 2000, pet. ref'd). A knife can be a deadly weapon, however, if in the manner of its use or intended use it was capable of causing death or serious bodily injury. *See* TEX. PEN.CODE ANN. § 1.07(a)(17)(B); *Davis,* 22 S.W.3d at 641; *Garcia v. State,* 17 S.W.3d 1, 4 (Tex.App.-Houston [1st Dist.] 1999, pet. ref'd).[6]

The Court made the evidentiary requirements clear in *Thomas:*

> ... we do not mean to suggest, and have not meant to suggest in past opinions, that a particular object alleged as a deadly weapon in the State's charging instrument need not be proven at trial to meet the statutory definition of a deadly weapon.... [T]he evidence is now fully adequate if it shows the weapon to be deadly by design, rather than by usage.

*Thomas,* 821 S.W.2d at 620. Finding no evidence that the knife in this case was manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury, we sustain Robertson's first issue in the methamphetamine appeal and will delete the trial court's affirmative finding of use of a deadly weapon. TEX.CODE CRIM. PROC. ANN. art. 42.12, § 3g(a)(2) (Vernon Supp.2004).

## CONCLUSION

Having found that Robertson did not preserve his complaint about the court's failure to suppress the evidence, we affirm the judgment of conviction of possession of cocaine in cause number 10–02–00284–CR.

Having also overruled Robertson's legal-sufficiency issue concerning intent to deliver the methamphetamine in his possession but having found that the State did not prove a deadly weapon, we reform the judgment in cause number 10–02–00283–CR to delete the deadly weapon finding and, as reformed, affirm it.

Chief Justice GRAY concurring and dissenting.

TOM GRAY, Chief Justice, concurring and dissenting.

I concur in part and respectfully dissent in part.

I concur in this Court's judgments to the extent that they affirm the convictions. I write separately in Cause No. 10–02–00284–CR to note that I find it curious that the majority ignores the very recent intent-to-deliver cases decided by the Court. A survey of these cases shows that the issue of intent to deliver is not nearly so close as the majority implies. *See King v. State,* 129 S.W.3d 680 (Tex.App.-Waco 2004, no pet.); *Bellard v. State,* 101 S.W.3d 594 (Tex.App.-Waco 2003, pet. ref'd); *Bethancourt–Rosales v. State,* 50 S.W.3d 650 (Tex.App.-Waco 2001, pet. ref'd).

But I respectfully dissent from the Court's judgment in Cause No. 10–02–00283–CR to the extent that it reforms the trial court's judgment to delete the deadly-weapon finding. If anyone has any question that the knife at issue is a deadly weapon, all he or she needs to do is examine it. Its length folded is 4%16 inches. Its length open is 7%16 inches, the blade being 3 inches from hilt to tip. The knife is not a

---

**6.** We also said that a determination of whether a knife is a deadly weapon in the manner of its use or intended use may be made with the following factors: (1) size, shape, and sharpness of the knife; (2) manner of its use or intended use; (3) nature or existence of inflicted wounds; and (4) testimony of the knife's life-threatening capabilities. *Id.*

traditional pocketknife with a flat back on one side and one sharp, curved side; rather, the blade is symmetrical and sharpened down both sides, coming to a point in the centerline of the holding position of the handle. It would be defined as a switch-blade. *See* TEX. PEN.CODE ANN. § 46.01(11)(A) (Vernon 2003). The blade is spring-loaded, and swings into an extended and locked position with the push of a button. The handle is equipped with a clip in order that the knife can be attached to a belt or the lip of a pocket, in order that the knife be easily accessible. The handle is also symmetrical, with a built-in swell at the hilt to act as a guard, and the entire handle is coated in a rubberized, slip-resistant material. The knife is classified by the Texas Penal Code as a "prohibited weapon." *See* TEX. PEN.CODE ANN. § 46.05(a)(5) (Vernon Supp.2004).

Accordingly, I concur in the judgment in Cause No. 10–02–284–CR; and in Cause No. 10–02–283–CR, I concur in this Court's judgment to the extent that it affirms the judgment of conviction, and I respectfully dissent to the extent that this Court's judgment reforms the judgment of the trial court to delete the deadly-weapon finding.