

# IN THE
# TENTH COURT OF APPEALS

## No. 10-11-00221-CR

**JOHN MARK WALKER,**

                                                                                                    **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                                                                                    **Appellee**

_____

### From the 361st District Court
### Brazos County, Texas
### Trial Court No. 10-02902-CRF-361

## MEMORANDUM  OPINION

In this appeal, appellant, John Mark Walker, challenges his conviction on two counts of aggravated assault with a deadly weapon, a second-degree felony. *See* TEX. PENAL CODE ANN. § 22.02(a)(2) (West 2011). In five issues, Walker argues that: (1) the evidence supporting Count 1 of the indictment is legally and factually insufficient; (2) there are material variances between the evidence presented in support of Counts 1 and 2 and that which was alleged in Counts 1 and 2 of the indictment; and (3) the trial court

erred in refusing to include an instruction in the charge as to the lesser-included offense of assault causing bodily injury. We affirm.

## I. BACKGROUND

This case pertains to an altercation between Walker and Anitra and Reneisha Bradford that transpired during the early morning hours of April 30, 2010. Anitra testified that she lives in a rental house with her four children, Reneisha, Stesia, Esau and Jacob. At the time of the altercation, Anitra was dating Walker, and Walker frequently spent the night at Anitra's house.

Several witnesses testified that Anitra did not have any electricity in the house on the night in question because the power company had turned off her services. That night, Walker came over to Anitra's house to visit. Anitra recalled that she and Walker got into an argument over the electric bill. Anitra alleged that Walker spent money on drugs without offering to help with the electric bill. Shortly thereafter, an altercation ensued, and apparently, the altercation became physical.

Anitra asserted that she went outside to get some fresh air, but Walker "snatched her over a chair" and dragged her back in the house. However, she admitted that she did not initially tell police that Walker "snatched her over a chair" and dragged her back in the house because she wanted to keep Walker from getting in trouble. Anitra testified that her arm was hurt as a result of the initial altercation. She further testified that Walker "kept saying we [are] all going to die," "I'm going to drown you," "I'm going to kill you," I'm going to kill your kids," "I'm going to kill myself," and "we're not leaving until we're both 6 feet under."

Reneisha, Anitra's eldest daughter, testified that she shared a room with her sister, Stesia. All of the children had gone to bed when the argument between Anitra and Walker began. However, they were soon awakened by the yelling and screaming. Reneisha recalled hearing Walker tell Anitra that he was going to kill her and that they all were going to die. During the argument, Stesia walked into the living room and saw Anitra on the floor with Walker over her. Stesia was told to mind her own business and go back to her room. Thereafter, Stesia and Reneisha gathered Jacob and Esau and went out of a bedroom window. Once outside, the kids split up and ran to different neighbors, imploring them to call the police.

Anitra's next-door neighbor, Yolanda Dozier, recalled waking up around midnight on the night in question. Dozier testified that her daughter was upset because she could hear Anitra and Walker fighting next door. Dozier then went to her daughter's room, where she could hear Anitra crying and "screaming like, Stop John. Stop. What's wrong with you[?] Why are you doing this[?]" Shortly thereafter, Dozier heard Reneisha knocking on the front door. Dozier opened the front door to see Reneisha, who was crying and asked to use the telephone to call the police because Walker was hurting her mother. Dozier allowed Reneisha to use the telephone.

Bryan Police Officer Reggie Arnold responded to the disturbance call. However, by the time the police arrived, Walker was no longer at the house. Officer Arnold testified that another officer informed him that "the male that was causing the disturbance had already left the scene, heard him climbing over a fence as [the officer] walked up to the house." Anitra asserted that Walker instructed her to go talk to the

police while he fled through a back window.  Upon arriving, the police secured the house and questioned Anitra.  Noticing no visible injuries and observing the inside of the house to be in order, the police left, but they assured the family that they would be riding around searching for Walker.  In any event, the family decided to "camp out" in the living room of the house and to barricade the front door with furniture.

Walker returned to the house later that night.  Walker apparently opened the front door using Anitra's keys and then moved the furniture to gain entrance to the house.  Stesia noticed that Walker had returned and tapped Anitra, who woke up and went to speak with Walker in the kitchen.  Witnesses testified that Anitra told Walker to leave and requested that he return the keys to the house and Anitra's cell phone.  According to Anitra, Walker was angry because he believed that she had called the police on him.  Walker repeated his earlier threat that:  "We [are] all going to die tonight."  At that point, Walker allegedly started swinging a knife at Anitra.

As Anitra and Walker were fighting, the children remained in the living room.  At some point, Anitra screamed for the children to run.  Both Stesia and Reneisha testified seeing Walker holding a box cutter to Anitra's neck, though the girls used the terms "box cutter" and "knife" interchangeably in their testimony and admitted that it was dark in the house due to the lack of electricity.[1]  Stesia ran to a neighbor's house, but Reneisha chose to stay and help Anitra.  Seeing Walker with a weapon to Anitra's neck, Reneisha yelled at Walker not to hurt her mother.  Walker responded by saying,

---

[1] Furthermore, Walker's father testified that Walker worked for him laying carpet and that Walker carried two knives on his person with one of them being a box cutter or a "utility knife."

"Why y'all trying to do this to me, why you-all trying to play me[?]" According to Reneisha, Walker then rushed at her and began punching her in the face, which resulted in Reneisha falling on the kitchen floor.

When she saw Walker attacking Reneisha, Anitra tried to pull Walker off of Reneisha and cried out "Mark, you [are] going to kill her, you know, stop, telling him to stop and . . . that's my baby . . . ." In response to Anitra's efforts, Walker resumed punching and choking Anitra.

While Walker focused his efforts on Anitra, Reneisha picked up a knife she saw on the floor and started stabbing Walker in the side. Reneisha testified that she did not know where the knife came from but that she used it to stop Walker from hurting her mother.

Though he slowed a bit after being stabbed, Walker continued to attack Anitra. After stabbing Walker in the side, Reneisha ran to Dozier's house next door with the knife in hand. When Reneisha made it to Dozier's house, Dozier and her husband took the knife from Reneisha and helped her in the house. Dozier observed that Reneisha had numerous cuts all over her body and that she was bleeding. Dozier denied that the cuts looked like scratches. The police were called once again, and while on the telephone, Dozier and her family could hear Anitra screaming for help.

Anitra described that Walker continued to be upset once Reneisha left. Anitra recalled that Walker "slammed me on my head. Like one of them wrestlers where you turn them upside down and wham." In addition, Anitra alleged that Walker wrapped the cord from the refrigerator around her neck. Eventually, Walker's attack of Anitra

stopped when he apparently lost consciousness from the earlier stabbing. Anitra "scooted" herself out from under Walker and crawled to Dozier's house next door. When Anitra arrived at Dozier's house, she was wet, crying, and visibly bleeding from the forehead. In addition, Anitra complained that her arm hurt.

When the police arrived, they noticed that Reneisha and Anitra, in particular, were visibly shaken. Officer Arnold noted that Reneisha appeared to have serious injuries that required stitches, though she declined to have her wounds stitched up out of fear. Officers noticed that Reneisha had a deep cut on her left side and scrapes and cuts all over her face, body, and thighs that were likely caused by a knife. Officers also opined that the knives allegedly used in this altercation could have caused death or serious bodily injury.[2] Officers also noticed that Anitra suffered injuries to her neck, shoulder, forehead, and side that were consistent with defensive injuries from a knife attack and from strangulation. Both Anitra and Reneisha were taken to the hospital for treatment.

Police officers proceeded carefully into Anitra's house. When they got inside they saw: "Blood on the floor, and as soon as you walk in and go to the right was the kitchen and there was a refrigerator that was pulled out, and I saw the Defendant [Walker] on the floor in a pool of blood." Police officers looked throughout Anitra's house for a box cutter, but only knives were recovered. Walker was subsequently

---

[2] According to Bryan Police Officer Aaron Arms, the deep cut on Reneisha's left side was a "pretty deep cut on the left side of her body. It was about 5 inches long, and it was real narrow." Officer Arms opined that the injuries sustained by Reneisha were likely caused by a knife. Bryan Police Officer Reggie Arnold stated that investigators found a broken knife on the kitchen floor that had a jagged blade. Officer Arnold testified that, based on his training and experience, Reneisha's wound to her left side was consistent with being stabbed by the broken knife found on the kitchen floor.

transported to the hospital for treatment. Walker could not immediately communicate because of his injuries. However, once Walker's condition improved, police officers interviewed Walker and later arrested him.

Walker testified on his own behalf during the guilt-innocence phase of trial. Walker stated that he had lived in the house with Anitra for three months. He disputed Anitra's testimony regarding the events leading up to the altercation. With regard to the electric bill, Walker testified that he had given the landlord some money to pay for the electric bill and that he planned to give the landlord more money later in the week. Walker asserted that he did not attack, try to hit, or start any trouble with Anitra or Reneisha. Instead, Walker asserted that Anitra became verbally aggressive with him. Walker denied that he and Anitra had a physical altercation during the initial incident, and he explained that he jumped out of the window prior to the arrival of the police to retrieve the children who had previously left the house. Walker did not return to the house until after the police left because he was afraid that Anitra would lose her HUD assistance if the police report stated that he also lived in the house.

Walker recalled that when he returned to the house, Anitra began yelling at him for no reason, and the next thing he remembered was Reneisha stabbing him in the left shoulder blade with no provocation. Walker denied yelling at anyone, and he testified that, in an attempt to steady himself, he grabbed the waists of both Anitra and Reneisha after he had been stabbed. Ultimately, Walker lost consciousness and was taken to the hospital for treatment. In his testimony, Walker knew of no reason why he was allegedly attacked by Anitra and Reneisha. Walker denied threatening to kill anyone

and asserted that Anitra and Reneisha's injuries must have occurred from them using knives against him in the dark.

At the conclusion of the evidence, the jury convicted Walker on both counts of aggravated assault.[3] The judgments reflect that a deadly weapon finding was made as to both counts. In Count 1, which pertained to Reneisha, the jury assessed punishment at five years' incarceration in the Institutional Division of the Texas Department of Criminal Justice ("TDCJ-ID"). In the second count, which pertained to Anitra, Walker was sentenced to ten years' incarceration in the TDCJ-ID. The imposed sentences were ordered to run concurrently. Walker filed a motion for new trial, which was overruled by operation of law. *See* TEX. R. APP. P. 21.8(a), (c). This appeal followed.

## II.    SUFFICIENCY OF THE EVIDENCE

In his first two issues, Walker argues that the evidence supporting his conviction as to Count 1—the count pertaining to Reneisha—is legally and factually insufficient. Specifically, Walker asserts that the State did not present any evidence demonstrating that he "used a knife to cut Reneisha Bradford causing her bodily injury . . . ." We disagree.

## A.    Applicable Law

The Texas Court of Criminal Appeals, in *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010), abandoned the factual-sufficiency standard in criminal cases; thus, we need only consider the sufficiency of the evidence under the legal-sufficiency

---

[3] Prior to trial, the State abandoned the allegation that the deadly weapon used in the commission of these offenses was a box cutter or an unknown bladed instrument. Instead, the State proceeded only on the allegation that the deadly weapon was a knife.

standard articulated in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 560 (1979).

In *Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011), *cert. denied*, 132 S. Ct. 2712 (2012), the Texas Court of Criminal Appeals expressed our standard of review of a sufficiency issue as follows:

> In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). This "familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13.

*Id.*

Our review of "all of the evidence" includes evidence that was properly and improperly admitted. *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001). And if the record supports conflicting inferences, we must presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Jackson*, 443 U.S. at 326; 99 S. Ct. 2793. Furthermore, direct and circumstantial evidence are treated equally: "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper*, 214 S.W.3d at 13. Finally, it is well established that the factfinder is entitled to judge the credibility of the witnesses and can choose to believe

all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

The sufficiency of the evidence is measured by reference to the elements of the offense as defined by a hypothetically-correct jury charge for the case. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Under a hypothetically-correct jury charge, the State was required to prove beyond a reasonable doubt that Walker intentionally or knowingly caused bodily injury to Reneisha and used or exhibited a deadly weapon during the commission of the assault. *See* TEX. PENAL CODE ANN. §§ 22.01(a)(1), 22.02(a)(2) (West 2011). A deadly weapon is "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." *Id.* § 1.07(a)(17)(B) (West Supp. 2012).

## B. Discussion

Here, several witnesses testified that Walker threatened to kill Anitra and her family on the night in question. In addition, both Stesia and Reneisha saw Walker hold a box cutter or knife to Anitra's throat, though Reneisha admitted that the only light in the kitchen was from outside and that "I never said he didn't have the weapon, but I didn't see it, I'm not for sure." Reneisha noted that when she intervened to help her mother, Walker began punching her in the face. Then, Anitra tried to pull Walker off of Reneisha. While this was transpiring, Reneisha found a knife on the floor of the kitchen and stabbed Walker.

When the police arrived at the scene, they noticed that Reneisha had several injuries that were bleeding and that resembled knife injuries. These injuries were

serious enough to leave permanent scarring and, according to Bryan Police Officer Reggie Arnold, were likely caused by the jagged blade on the broken knife found on the kitchen floor near where Walker collapsed. One injury, in particular, stood out to police. Bryan Police Officer Aaron Arms recalled that Reneisha sustained a deep cut on her left side which was five inches long, narrow, and likely caused by a knife. Police officers also testified that the numerous cuts and nicks on Reneisha's body appeared to be the result of an assault with a knife. Furthermore, police searched the house for a box cutter and other weapons but only found a knife on the floor near Walker and the knife that Reneisha took when she ran to Dozier's house. And finally, Officers Arnold and Garland Shawn Davis noted that, based on their training and experience, the knife allegedly used by Walker was capable of causing serious bodily injury or death.

On the other hand, Walker testified that he did not attack anyone on the night in question and denied using a knife to cut Reneisha. Instead, he asserts that Reneisha stabbed him with a knife without any provocation and alleges that Reneisha caused her own injuries when she stabbed him. However, Walker's testimony is undermined by most of the testimony adduced at trial. In particular, Anitra testified that Walker was in possession of a knife when he returned to the house after the police had left and that he started swinging the knife at her face.

In any event, as we noted earlier, it is within the province of the jury to assess a witness's credibility and to resolve conflicts in the evidence. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *see also Chambers*, 805 S.W.2d at 461. In convicting Walker for using a deadly weapon in the aggravated assault of Reneisha, the jury clearly believed that

Walker was the aggressor in this altercation and that he used a knife to cut Reneisha. In addition, the jury clearly disbelieved Walker's explanation that Reneisha caused her own injuries when she stabbed him with a knife. Accordingly, we must defer to the jury's resolution of conflicts in the evidence. *Jackson*, 443 U.S. at 326; 99 S. Ct. 2793; *Lancon v. State*, 253 S.W.3d 699, 706 (Tex. Crim. App. 2008); *Render v. State*, 316 S.W.3d 846, 859 (Tex. App.—Dallas 2010, pet. ref'd) ("An appellate court must give deference to a jury's decision regarding what weight to give contradictory testimonial evidence because the decision is most likely based on an evaluation of credibility and demeanor, which the jury is in a better position to judge.").

Moreover, we do not believe that the State was required to present direct evidence showing that Reneisha actually saw Walker stab her with a knife. *See, e.g., Thurman v. State*, No. 01-02-00030-CR, 2002 Tex. App. LEXIS 7849, at **6-7 (Tex. App.—Houston [1st Dist.] Oct. 31, 2002, no pet.) (not designated for publication) (finding evidence of knives recovered by the police, the victim's testimony that the injury "felt" like a serrated knife cutting into his throat, and his scar sufficient to establish the wound was produced by a knife and not some other sharp-bladed instrument). As noted earlier, the jury is entitled to draw reasonable inferences from basic facts to ultimate facts, and each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all incriminating circumstances is sufficient to support appellant's conviction. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Hooper*, 214 S.W.3d at 13.

Therefore, viewing the evidence in the light most favorable to the prosecution, we conclude that a rational juror could have concluded that the cumulative force of all the incriminating circumstances is sufficient to demonstrate that Walker stabbed Reneisha with a deadly weapon—a knife—on the night in question. *See* TEX. PENAL CODE ANN. §§ 1.07(a)(17)(B), 22.01(a)(1), 22.02(a)(2); *see also Jackson*, 443 U.S. 318-19, 99 S. Ct. at 2788-89; *Lucio*, 351 S.W.3d at 894; *Hooper*, 214 S.W.3d at 13. Accordingly, we find that the evidence is sufficient to support Walker's aggravated-assault-with-a-deadly-weapon conviction as to Count 1 of the indictment. *See Jackson*, 443 U.S. 318-19, 99 S. Ct. at 2788-89; *see also Lucio*, 351 S.W.3d at 894; *Hooper*, 214 S.W.3d at 13. Walker's first two issues are overruled.

## III.    VARIANCE

In his third and fourth issues, Walker contends that there are material variances between the evidence presented and both counts of the indictment. Specifically, Walker argues that the testimony establishes that a box cutter was used to perpetrate the alleged crimes and that the State abandoned the language in the indictment pertaining to usage of a box cutter as to both counts. As such, Walker asserts that the evidence is insufficient to support his convictions.

## A.    Applicable Law

A "variance" occurs when there is a discrepancy between the allegations in the charging instrument and the proof at trial. *Gollihar v. State*, 46 S.W.3d 243, 246 (Tex. Crim. App. 2001). In a variance situation, the State has proven the defendant guilty of a crime but has proven its commission in a manner that varies from the allegations in the

charging instrument. *Id.* A variance can be classified into three categories. First, a variance involving statutory language that defines the offense always renders the evidence legally insufficient to support the conviction. *Johnson v. State*, 364 S.W.3d 292, 298 (Tex. Crim. App. 2012). Second, a variance involving a non-statutory allegation that describes an "allowable unit of prosecution" element of the offense may or may not render the evidence legally insufficient, depending upon whether the variance is material. *Id.* Finally, other types of variances involving immaterial non-statutory allegations do not render the evidence legally insufficient. *Id.* Essentially, we treat variance claims as a problem with the sufficiency of the evidence. *Gollihar*, 46 S.W.3d at 246.

A variance that is not prejudicial to the defendant's substantial rights is immaterial. *Id.* at 248. In determining whether a defendant's substantial rights have been prejudiced, we consider whether (1) the indictment, as written, informed the defendant of the charge against him sufficiently to allow him to prepare an adequate defense at trial, and (2) whether the prosecution, under the indictment as drafted, would subject the defendant to the risk of being prosecuted later for the same crime. *Id.*

**B.      Discussion**

Based on our review of the evidence, we do not find a material variance between the evidence and the allegations contained in both Counts 1 and 2 of the indictment. We base this conclusion on the testimony adduced from several witnesses. In particular, Anitra stated that Walker swung a knife at her when he came back to the house after the police left. Though we recognize that Reneisha and Stesia—both minors

at the time of the incident—asserted at various times in their testimony that Walker used a box cutter in the altercation, both girls used the terms "box cutter" and "knife" interchangeably and admitted that they assumed the weapon was a box cutter because Walker worked laying carpet and usually carried a box cutter. However, later testimony from Walker's father indicates that Walker's assertion in this issue amounts to a distinction without a difference, especially considering Walker's father referred to the box cutter that carpet layers typically carry on their person as a "utility knife." *See* TEX. PENAL CODE ANN. § 46.01(7) (West Supp. 2012) (defining a "knife" as "any bladed instrument that is capable of inflicting serious bodily injury or death by cutting or stabbing a person with the instrument"); *see also Marc v. State*, 166 S.W.3d 767, 772 (Tex. App.—Fort Worth 2005, pet. ref'd) (analyzing the sufficiency of the evidence and finding references to a "knife," "box cutter," and a "razor" were not inconsistent); *Robertson v. State*, 175 S.W.3d 359, 364-65 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd) (finding no fatal variance in alleging the defendant used a knife in the commission of the offense rather than a "box-cutter knife").

In addition, the record contains testimony stating that the injuries sustained by both Reneisha and Anitra were likely caused by a knife and that the knife used constituted a deadly weapon. In particular, Reneisha had a deep, narrow wound on her left side that police testified was likely caused by a knife with a jagged blade—the same knife that was found near Walker when police arrived. Furthermore, several law enforcement witnesses noted that no box cutters were found at the scene of the crime. And based on this evidence, we have already concluded in Walker's first two issues that

the evidence is sufficient to support his convictions for aggravated assault with a deadly weapon. *See Gollihar*, 46 S.W.3d at 247-48 (noting that variances that are not prejudicial to the substantial rights of the defendant are "immaterial" and do not constitute insufficient evidence).

Accordingly, we conclude that the indictment sufficiently informed Walker of the charges against him to allow him to prepare an adequate defense as to both counts. *Id.* at 248; *see Johnson*, 364 S.W.3d at 298. Moreover, we do not believe that Walker was put at risk of being prosecuted later for the same crime by the inclusion of the word "knife," rather than "box cutter." *See* TEX. PENAL CODE ANN. §§ 1.07(a)(17)(B), 22.02(a)(2) (providing that a person commits the offense of aggravated assault if the person commits assault while using or exhibiting a *deadly weapon*); *see Gollihar*, 46 S.W.3d at 248; *Johnson v. State*, 91 S.W.3d 413, 418 (Tex. App.—Waco 2002, pet. ref'd). As such, we do not find a material variance between the evidence and the allegations contained in the indictment. Walker's third and fourth issues are overruled.

## IV.    LESSER-INCLUDED-OFFENSE INSTRUCTION

In his fifth issue, Walker argues that the trial court erred in denying his request for an instruction in the jury charge about the lesser-included offense of assault causing bodily injury as to Count 1 of the indictment. Walker suggests that the evidence does not demonstrate that he cut Reneisha with a knife. Instead, Walker asserts that the evidence only shows that he punched Reneisha. Thus, according to Walker, the evidence shows that he is only guilty of assault causing bodily injury to Reneisha.

**A.  Applicable Law**

The determination of whether a lesser-included-offense instruction requested by a defendant must be given requires a two-step analysis. *Rousseau v. State*, 855 S.W.2d 666, 672-73 (Tex. Crim. App. 1993). The first step asks whether the lesser-included offense is included within the proof necessary to establish the offense charged. *McKithan v. State*, 324 S.W.3d 582, 587 (Tex. Crim. App. 2010). We must compare the statutory elements and any descriptive averments in the indictment for the greater offense with the statutory elements of the lesser offense. *See Ex parte Amador*, 326 S.W.3d 202, 206 n.5 (Tex. Crim. App. 2010); *Hall v. State*, 225 S.W.3d 524, 535-36 (Tex. Crim. App. 2007); *see also* TEX. CODE CRIM. PROC. ANN. art. 37.09 (West 2006). This step is a question of law. *Hall*, 225 S.W.3d at 535.

The second step of the lesser-included-offense analysis is to determine if there is some evidence from which a rational jury could acquit the defendant of the greater offense while convicting him of the lesser-included offense. *Guzman v. State*, 188 S.W.3d 185, 188-89 (Tex. Crim. App. 2006). The evidence must establish the lesser-included offense as "a valid rational alternative to the charged offense." *Segundo v. State*, 270 S.W.3d 79, 90-91 (Tex. Crim. App. 2008). We review all of the evidence presented at trial. *Hayward v. State*, 158 S.W.3d 476, 478-79 (Tex. Crim. App. 2005); *Rousseau*, 855 S.W.2d at 673.

## B.    Discussion

Assuming without deciding that Walker met the first prong in the lesser-included-offense analysis, we focus our analysis on the second prong.  We have already concluded that the evidence supporting the jury's verdict as to Count 1 of the indictment is sufficient.  Because of this conclusion, we cannot say that a rational jury could acquit Walker of the greater offense—aggravated assault with a deadly weapon—while convicting him of the alleged lesser-included offense—assault causing bodily injury.  *See Segundo*, 270 S.W.3d at 90-91; *Guzman*, 188 S.W.3d at 188-89.

In addition, the Texas Court of Criminal Appeals has held that:

> A defendant's own testimony that he committed no offense, or testimony that otherwise shows that no offense occurred at all, is not adequate to raise the issue of a lesser-included offense.  In *Bignall v. State*, we concluded, "if a defendant either presents evidence that he committed no offense or presents no evidence, and there is no evidence otherwise showing that he is guilty of a lesser-included offense, then a charge on a lesser-included offense is not required."  The evidence must establish that if a defendant is guilty, he is guilty only of the lesser[-]included offense.

*Lofton v. State*, 45 S.W.3d 649, 652 (Tex. Crim. App. 2001) (internal citations omitted).

In his testimony, Walker denied committing any offense.  In fact, he stated that he did not hurt Reniesha or Anitra and that he "never posed a threat to either one of them."  Because Walker denied committing any offense, and because we have already concluded that the evidence is sufficient to support his conviction for aggravated assault with a deadly weapon, we cannot say that the trial court abused its discretion in denying his request for an instruction in the jury charge on the alleged lesser-included offense of assault causing bodily injury.  *See Jackson v. State*, 160 S.W.3d 568, 574 (Tex.

Crim. App. 2005) (stating that we review a trial court's decision not to submit a lesser-included-offense instruction for abuse of discretion); *see also Segundo*, 270 S.W.3d at 90-91; *Guzman*, 188 S.W.3d at 188-89; *Lofton*, 45 S.W.3d at 652.  Accordingly, we overrule Walker's fifth issue.

## V. CONCLUSION

Having overruled all of Walker's issues, we affirm the judgment of the trial court.


AL SCOGGINS
Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
Affirmed
Opinion delivered and filed November 29, 2012
Do not publish
[CR25]