

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NO. PD-1184-20

**DAVID WAYNE KERR, Appellant**

**v.**

**THE STATE OF TEXAS**

### DISSENT TO REFUSAL OF
### STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE SEVENTH COURT OF APPEALS
### RANDALL COUNTY

**KELLER, P.J., filed a dissenting opinion.**

When a trial court imposes a harsher sentence in a new punishment hearing after appellate reversal, must a defendant lodge a vindictiveness objection to preserve a claim of presumptive vindictiveness on appeal? And if the defendant testified for the first time at the new punishment hearing and denied responsibility for his conduct, and the trial judge remarked about that denial, does that rebut the presumption of vindictiveness? Because I think the answer to both of those questions

is "yes," I would grant the State's first and third grounds in its petition for discretionary review.[1]

## I. BACKGROUND

### A. Trial Level

Appellant was charged with two counts of aggravated sexual assault of a child under age six. The alleged victim was his daughter. Pursuant to a plea agreement, he was placed on deferred adjudication for two counts of the lesser-included offense of aggravated sexual assault of a child under the age fourteen.

Later, the State filed a motion to adjudicate, alleging violations of community supervision. The State offered a deal for eighteen years on each count to run concurrently. At a status hearing, Appellant rejected that deal, sought to fire his attorney, and claimed, "I have records of my own that can prove my innocence." Represented by a new attorney at the adjudication hearing, Appellant pled "true" to some of the State's allegations and "not true" to others (the trial court went through each of the State's allegations separately, asking for Appellant's plea). In accordance with defense counsel's wishes, the issues of adjudication and punishment were heard together in a unitary proceeding. Appellant did not testify at the hearing. The trial court orally adjudicated Appellant guilty and sentenced him to seventy-five years, without addressing the fact that there were two counts. Separate written judgments for each count reflected a sentence of seventy-five years, to run concurrently.

The court of appeals reversed the case because the trial court's oral pronouncement at the hearing had not separately found Appellant guilty and sentenced him on each count. At the new

---

1.  [1]  The State's first ground contends: "Presumptive vindictiveness claims should require an objection." The State's third ground contends: "A defendant's first-time testifying should foreclose or rebut a presumption of vindictiveness."

adjudication hearing on remand, Appellant pled "not true" to all of the State's allegations (the trial court did not go through the allegations individually and simply asked for Appellant's plea to all of them). The trial judge had previously rejected a plea agreement of forty years, and the parties had no other agreement. In accordance with defense counsel's wishes, the issues of adjudication and punishment were bifurcated into separate stages. Appellant did not testify at the adjudication stage, but he did testify at the punishment stage.

When asked on direct examination how he felt about his seventy-five year sentence, Appellant responded:

> I thought seventy-five years was a little too much. But Your Honor, the story is -- I mean, it's basically a long story. I married a drug addict. Every time I fought her drug addiction she would call CPS on me and that -- being very vengeful. She did not make this final allegation until she realized that I was serious about the divorce. And that's when this final allegation came up. And I fought -- I fought her -- that's my long history with CPS is because every time I would kick her out . . .

Appellant's response was cut off by a sustained objection to "narrative." When asked if he still maintained his innocence, Appellant responded, "Yes, sir." When asked why he pled guilty, Appellant answered:

> Out of fear, out of duress. I was losing my home. I lost everything I had. I lost everything I had to the drug addict and now I was losing the rest to the court.

When asked why he did not complete his treatment plan, Appellant explained:

> The last day that I went to the treatment program Mr. Timmons' assistant and the other students in the program were yelling at me and trying to force me to say things, trying to make me plead guilty to a crime I didn't feel I was guilty of. And it made me mad and that's when I stopped going.

On cross examination, the prosecutor asked if Appellant was aware that his daughter "has continued to struggle in her -- in her childhood with what happened to her at the hands of you?"

Appellant responded, "I'm not so sure about that." The State also asked Appellant if he was aware that his daughter had problems with sexually acting out. Appellant responded, "[S]he's always masturbated since she was tiny before she was even out of diapers." He denied that he taught his daughter the technique. When asked whether he had told his daughter not to talk to the police, Appellant responded, "I asked her why she did, because she is known for her stories. I've had officers come to my door before questioning me about burying her mother in the backyard, and had to introduce her mother to the officer."

The prosecutor also asked Appellant about a previous conviction for criminally negligent homicide arising from a traffic accident. Appellant said it was "questionable . . . whether who ran the red light." He also stated, "I had no choice but to plead out to that because she died." When the prosecutor asked, "So you're saying you -- you didn't – you don't really believe you were responsible in that situation either?" Appellant responded, "I don't think I was completely responsible, no, ma'am." When the prosecutor asked if he "T-boned" the victim's car, Appellant responded, "I think it was a mutual accident. And it was the first accident I've ever had in my life." The prosecutor then introduced photos of the victim's car after the accident. Appellant acknowledged that the victim died at the scene. When asked whether he believed he was guilty of criminally negligent homicide, Appellant responded, "I don't think I was fully guilty, no, ma'am."

The prosecutor also questioned Appellant about his guilty plea to assaulting his wife. appellant said he hit her "[b]ecause she was assaulting me" and that his attack on her "was in self-defense." The prosecutor concluded her cross-examination by asking, "You don't believe you're guilty of the ones we're here on today?" Appellant answered, "No, ma'am."

After closing arguments, the trial judge addressed Appellant about his various claims of

innocence:

> Mr. Kerr, the first thing I would point out to you is, you indicated you thought that the sentence was a little stiff. If you're innocent, any sentence is stiff.
>
> * * *
>
> And if I thought you were innocent certainly I'd have a duty to -- to further that and I certainly would not be sentencing you to any amount. A day would be too stiff for an innocent person. So, you know, I'm not -- I've previously, you know, found you to be guilty. I've previously found the allegations to be true. I've now found the allegations to be true again. I don't fault you for your appeal. You're entitled to that and the Court of Appeals was correct. I should have pronounced sentence on each count and I did not do so. So that's all water under the bridge, but I would just say this to you, sir. You know, I'm willing to accept that innocent people get convicted of things, but the -- the credibility of your claim is strained a bit when you don't seem to have been guilty of anything that you've been accused of. You're not guilty in this vehicle wreck, you're not guilty -- or you've got an excuse -- you know, you said you were in self-defense. Self-defense is an absolute defense to something. If you were acting in self-defense you're not guilty of assaulting your wife, so you're telling me you're not guilty of that. Just -- when you're not guilty of anything, it whittles away at your protestations in this case that you're not guilty. And so for those reasons I don't find that to be credible and I think the original guilty plea was supported by the evidence. It's certainly supported by the evidence now . . .[2]

Immediately after saying that Appellant's guilt is "certainly supported by the evidence now," the trial judge continued the sentence with the words "and with that said, then" and launched into findings of guilt and the imposition of seventy-five year sentences on both counts.[3] The trial judge then asked about stacking: "My understanding is that under Penal Code 3.03, if the offense in these counts was one under Section 22.02(1) of the Penal Code, then the Court is entitled to stack. Am

---

[2] Ellipsis in place of Appellant's "Yes, sir" response to some of the trial judge's comments.

[3] The judge's comments read as follows: "It's certainly supported by the evidence now, and with that said, then I will find you guilty of Count I, sentence you to 75 years in the Texas Department of Criminal Justice, Institutional Division. I will give you credit for the time that you've served. I will then find you guilty of Count II, sentence you to 75 years in the Texas Department of Criminal Justice, Institutional Division."

I correct?" The prosecutor responded that he was. The trial judge then ordered the sentences to run consecutively. The defense did not object to the trial judge imposing consecutive sentences.

### B. Appeal

The court of appeals reversed on the basis that the trial judge's imposition of consecutive sentences violated the due process guarantee against judicial vindictiveness.[4] Addressing the State's contention that the issue was not preserved, the court of appeals concluded that an objection was not required because the right to a fair and unbiased judge was a *Marin*[5] category two right that could not be forfeited by inaction.[6] On the merits, the court of appeals held that a "presumption of vindictiveness" arose in this case because the same sentencing authority assessed a more severe punishment after a successful appeal.[7] Once such a presumption arose, the court of appeals reasoned, the burden shifted "to the State to show a reasonable basis for the increased severity of punishment."[8] The court of appeals concluded that the State had not made such a showing because it did "not offer any explanation justifying a more severe punishment than that assessed prior to Appellant's successful appeal, the State actually offered a plea bargain of forty years (thirty-five years less than the prior sentence assessed by the trial judge) which was rejected by the trial judge before the proceeding even

---

[4] *Kerr v. State*, No. 07-19-00338-CR, 2020 WL 6576160, *5 (Tex. App.—Amarillo November 9, 2020) (not designated for publication).

[5] *Marin v. State*, 851 S.W.2d 275 (Tex. Crim. App. 1993).

[6] *Kerr*, 2020 WL 6576160, at *4 (citing *Marin* and *Grado v. State*, 445 S.W.3d 736 (Tex. Crim. App. 2014)).

[7] *Id.* at *5.

[8] *Id.*

commenced."[9]

A concurring opinion by Chief Justice Quinn expounded further on preservation.[10] The concurrence acknowledged that a number of intermediate appellate opinions have concluded that judicial vindictiveness claims must be preserved,[11] but it contended that these opinions were all ultimately based on a single case that relied upon a Court of Criminal Appeals case involving prosecutorial vindictiveness.[12] The concurrence claimed that there were reasons for treating prosecutorial and judicial vindictiveness differently for purposes of preservation.[13] The main reason given by the concurrence is that bringing the issue to the judge's attention could create ill will upon the part of the judge against the party making the claim. The concurrence also cited our recent case of *Proenza*[14] as supporting the notion that partiality by the judge need not be preserved.[15]

## II. ANALYSIS

### A. Preservation

Texas Rule of Appellate Procedure 33.1 sets forth the general requirement of error preservation: a party must ordinarily object in a timely fashion and state the basis of the objection.[16]

---

[9] *Id.*

[10] *Id.* (Quinn, C.J., concurring).

[11] *Id.* (citing cases).

[12] *Id.*

[13] *Id.*

[14] *Proenza v. State*, 541 S.W.3d 786 (Tex. Crim. App. 2017).

[15] *Kerr*, 2020 WL 6576160, at *5 (Quinn, C.J., concurring).

[16] *See* TEX. R. APP. P. 33.1.

The *Marin* case recognized that there are exceptions, but *Marin* also recognized that *most* complaints must be preserved.[17]  Almost all error, even constitutional error, may be forfeited if the appealing party does not object.[18]  *Marin* recognized two narrow categories of errors that are not forfeited by inaction: (1) absolute requirements or prohibitions and (2) waivable-only rights.[19]  The question is whether the court of appeals was correct that a presumption of vindictiveness falls in the waivable-only category.

*Proenza* did emphasize that actions bringing into question a trial judge's impartiality are more likely to be seen as falling within the category of waivable-only issues: "[W]hen the trial judge's impartiality is the very thing that is brought into question, *Marin*'s typical justification for requiring contemporaneous objection loses some of its potency."[20]  The *Proenza* court further explained that a litigant who perceives a violation of the rule against commenting on the weight of the evidence (Article 38.05)[21] does not necessarily indicate a relinquishment of his rights by being silent.[22]  "Silence may just as fairly indicate a litigant's calculation that, if the trial judge is indeed partial to the opposing side in her evidentiary commentary, she will likewise display partiality in ruling upon the Article 38.05 objection itself."[23]  The Court concluded that an objection could be futile, and "at worst

---

[17]  851 S.W.2d at 278.

[18]  *Fuller v. State*, 253 S.W.3d 220, 232 & n. 48 (Tex. Crim. App. 2008)

[19]  851 S.W.2d at 279.  The third, and largest, category are rights that are forfeited by inaction.  *Id.*

[20]  541 S.W.3d at 799.

[21]  *See* TEX. CODE CRIM. PROC. art. 38.05.

[22]  *Proenza*, 541 S.W.3d at 799.

[23]  *Id.*

could reinforce to the jury that the trial judge stands solidly in the corner of the opponent."[24]  And

the Court found that Article 38.05 played a role "in protecting the perception of the trial judge's

impartiality in front of the jury."[25]  Allowing the right against judicial comments on the weight of the

evidence to be forfeited by inaction poses the potential of "shaking the public's perception of the

fairness of our judicial system and breeding suspicion of the fairness and accuracy of judicial

proceedings."[26]  Consequently, the right was "too significant to the judicial system to conclude that

it is extinguished by mere inaction."[27]  For these last two statements, *Proenza* relied on the earlier

case of *Grado*,[28] which held that a complaint about trial judge's failure to consider the full range of

punishment, even when it was simply a mistake, did not have to be preserved.[29]

A presumption of vindictiveness differs from the situations in *Proenza* and *Grado* in

significant respects.  First, it differs from *Proenza* and *Grado* on whether we even know that the

judge has done anything wrong.  When a judge has commented on the weight of the evidence or has

considered an improper punishment range, he or she has violated a statute and has engaged in what

our legislature has deemed to be improper conduct.  When a judge has imposed a harsher sentence

after an appeal under circumstances that are presumed to be vindictive, we do not know whether the

judge has done anything improper.  Perhaps the judge had good, non-vindictive reasons for assessing

---

[24]  *Id.*

[25]  *Id.*

[26]  *Id.* at 800.

[27]  *Id.*

[28]  *Id.*

[29]  *See Grado*, 445 S.W.3d at 740-42.

a harsher sentence that do not appear in the record. Significantly, the Supreme Court has characterized the presumption of vindictiveness as a "prophylactic rule[] [to] assist in guaranteeing the propriety of the sentencing phase."[30]

Second, it differs from *Proenza* on whether an objection would be futile. As discussed above, *Proenza* recognized the likely futility of an objection to a trial judge's improper comments. But an objection in the presumption-of-vindictiveness situation would not be futile because it would give an appellate court information needed to assess whether the trial judge was vindictive. If the objection is lodged and the trial judge refuses to offer any reasons for the harsher punishment, then the appellate court can presume vindictiveness, knowing that the trial judge was given a chance to explain himself and chose not to. If the trial judge offers reasons that reveal bias, then a conclusion that the judge was vindictive could become even more obvious. If the trial judge offers reasons that seem legitimate but are not supported by the record, then an appellate court could conclude that the reasons are pretextual. But if trial judge gives good reasons that are supported by the record, then an appellate court could conclude that the trial judge did not act vindictively.

Third, it differs from *Proenza* on whether the defendant would likely be harmed by any ill will inspired by the objection. As discussed above, *Proenza* recognized that ill will inspired by an objection to a trial judge's comments could cause the judge to harden his position in front of the jury, making it even more clear that the judge was in the opposing side's corner. Or the judge could retaliate in some other fashion. But a defendant is unlikely to be harmed by ill will generated by a vindictiveness objection. After all, once sentence is imposed, the case is basically over. What can the trial judge do to the defendant at that juncture? There is still the motion-for-new-trial stage, but if the defendant

---

[30] *Texas v. McCullough*, 475 U.S. 134, 142 (1986).

really is the victim of vindictiveness on sentencing, the likelihood of the judge granting a new trial seems vanishingly small. And if he is not being vindictive, the judge is unlikely to take the complaint personally but would see the value of setting forth his reasons on the record. And of course, there is no jury to influence when the issue is whether the trial judge vindictively imposed a harsher sentence.

Finally, it differs from *Proenza* and *Grado* on whether an objection requirement would detract from a perception of fairness. Causing someone to forfeit error when the judge has made an improper comment or when the judge has considered an improper range of punishment could leave observers to believe the trial was unfair. But when the facts give rise only to a *presumption* of vindictiveness, then it remains to be seen whether the judge actually did anything wrong. Requiring an objection facilitates an inquiry, allowing the public to be informed on whether or not the judge was in fact vindictive. And if we make it clear that an objection is required, a defendant can raise an ineffective assistance claim if his attorney fails to object, and in habeas proceedings the reasons for the judge's harsher sentence can be revealed. Those reasons will either confirm that the judge did nothing wrong or confirm that he did and lead to a grant of relief. The perception that justice has actually been served in a particular case will be greater if the disposition of the case is perceived to be based on accurate information. Granting relief on a presumption of vindictiveness when the judge was not given an opportunity to explain the reasons for the harsher sentence would leave lingering doubts about about whether justice was truly served.

Moreover, as I discuss in the next section, the record supports assessing a harsher sentence, and the trial judge made record-supported comments that would justify assessing a harsher sentence. My main argument in that regard is that the presumption of vindictiveness has been rebutted, but if

the defendant thinks that the record is not clear enough, or that the judge has failed to sufficiently explain himself, then the defendant surely ought to object at least under those circumstances.[31] It is hard to see how a perception of unfairness can arise when the judge makes record-supported statements that support a harsher sentence.

In any event, the concurrence in the court of appeals acknowledges that there are intermediate appellate court opinions holding that preservation is required in a presumption-of-vindictiveness situation.[32] That means the court of appeals's decision in this case has created a split in the courts of appeals that we should step in to resolve. And given the systemic nature of error preservation,[33] whether an objection is required in a presumption-of-vindictiveness situation is an important issue of the sort that this Court should resolve, even without an appellate conflict.

### B. Presumption Rebutted

But even if the issue did not need to be preserved, the presumption of vindictiveness has been rebutted on the current record. The Supreme Court has held that a presumption of judicial vindictiveness can be rebutted.[34] The presumption can be overcome by "objective information . . .

---

[31] *Cf. Whatley v. State*, 946 S.W.2d 73, 75-76 (Tex. Crim. App. 1997) (A defendant does not have to object to the State's complete failure to give notice that it was seeking a deadly weapon finding but if a general notice of intent to seek a deadly weapon finding is given, defendant is required to object to any perceived lack of specificity in the notice).

[32] *Supra* at n.9. *See e.g. Rhymes v. State*, 536 S.W.3d 85, 99 (Tex. App.—Texarkana 2017, pet. ref'd) ("[A]n issue of judicial vindictiveness is not preserved for appellate review when the appellant does not meet the requirements of Rule 33.1."). The cases cited by the concurrence encompass four different courts of appeals: Texarkana, Houston (First District), Corpus Christi, and Tyler).

[33] *Darcy v. State*, 488 S.W.3d 325, 327-28 (Tex. Crim. App. 2016).

[34] *McCullough*, 475 U.S. at 141.

justifying the increased sentence."[35]  Such objective information can include previously unheard evidence about the defendant's past.[36]  And because a presumption of vindictiveness "may operate in the absence of any proof of an improper motive and thus block a legitimate response to criminal conduct," the Supreme Court has "limited its application, like that of other judicially created means of effectuating the rights secured by the Constitution, to circumstances where its objectives are thought most efficaciously served."[37]

It is perhaps arguable that no presumption arises here because the defendant testified in the new proceeding when he had not done so in the prior one.  In *Alabama v. Smith*, the Supreme Court held that, when a greater penalty is imposed after trial than was imposed after a prior guilty plea, the presumption of vindictiveness does not apply.[38]  The Court concluded that "[e]ven when the same judge imposes both sentences, the relevant sentencing information available to the judge after the plea will usually be considerably less than that available after a trial."[39]  Perhaps the defendant's first-time testimony at the punishment stage of a second trial could be seen as a logical extension of this principle, because the judge would necessarily have more information about the defendant on which to sentence him.  That would include not only the defendant's testimony, but also his demeanor on the stand and his tone of voice, which are issues the trial court can observe but an appellate court

---

[35]  *Id.* at 142 (ellipsis in *McCullough*).

[36]  *Id.* at 141-42.

[37]  *Alabama v. Smith*, 490 U.S. 794, 799 (1989) (internal quotation marks, ellipsis, and brackets omitted).

[38]  *Id.* at 801.

[39]  *Id.*

cannot.[40]

Even if the defendant taking the stand is not by itself sufficient to take the case out of a presumption of vindictiveness, the content of his testimony might be enough. When the Supreme Court first imposed the presumption-of-vindictiveness rule, it stated that "whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear."[41] But in *Smith*, the Court indicated that the absence of an explanation by the trial court simply created a presumption of vindictiveness that could be rebutted by evidence in the record: "In order to assure the absence of such a motivation, we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for him doing so must affirmatively appear. *Otherwise*, a presumption arises that a greater sentence has been imposed for a vindictive purpose—a presumption that must be rebutted by objective information justifying the increased sentence."[42] Appellant's testimony certainly constituted objective information justifying an increased sentence. His testimony was disastrous. He essentially denied responsibility for three different crimes for which he was convicted, as well as for the obvious distress suffered by his daughter, the victim in this case.

But if an explanation from the trial judge is required to rebut a presumption of vindictiveness, the trial judge in the present case provided one. He discussed Appellant's denial of responsibility for

---

[40] *See Buntion v. State*, 482 S.W.3d 58, 84 (Tex. Crim. App. 2016) (noting the great deference we accord trial court rulings that involving prospective jurors because the trial court is present to observe demeanor and listen to tone of voice).

[41] *North Carolina v. Pearce*, 395 U.S. 711, 726 (1969).

[42] *Smith*, 490 U.S at 798-99 (internal quotation marks, ellipsis, and citation omitted) (emphasis added).

his various convictions. And the trial judge indicated that this discussion was connected to his punishment decision when he used the words "and with that said, then" and launched into his findings of guilt and the sentences assessed.

Moreover, it seems at least relevant that the trial judge explicitly said that he did *not* hold Appellant's appeal against him. Instead, he acknowledged that he had made a mistake and that the court of appeals was correct to reverse him. Whether or not such a statement would alone be enough to rebut a presumption of vindictiveness, it seems to be a relevant consideration that can rebut the presumption when combined with other circumstances.

The court of appeals also pointed to the fact that the trial judge did not accept the forty-year plea deal that the State had offered. Of course, a trial judge is not required to accept a plea agreement,[43] and a trial judge's refusal to assess a *lesser* sentence does not give rise to a presumption of vindictiveness.[44] Considering the nature of the trial judge's error in the original adjudication proceedings—failing to separately pronounce guilt and sentences on each count—he could reasonably have believed that a plea agreement for a lesser sentence was unwarranted and that a lesser sentence would need to be justified by new mitigating evidence at a hearing. There is nothing vindictive or biased about the judge believing that his earlier determination of a seventy-five year sentence was appropriate in the absence new evidence:

> The judge who presides at a trial may, upon completion of the evidence, be exceedingly ill disposed towards the defendant, who has been shown to be a thoroughly reprehensible person. But the judge is not thereby recusable for bias or prejudice, since his knowledge and the opinion it produced were properly and

---

[43] TEX. CODE CRIM. PROC. art. 26.13(a)(2).

[44] *See United States v. Rodgers*, 278 F.3d 599, 603-04 (6th Cir. 2002) (reimposition of original sentence after remand does not give rise to a presumption of vindictiveness).

necessarily acquired in the course of the proceedings, and are indeed sometimes (as in a bench trial) necessary to completion of the judge's task. As Judge Jerome Frank pithily put it: "Impartiality is not gullibility. Disinterestedness does not mean child-like innocence. If the judge did not form judgments of the actors in those court-house dramas called trials, he could never render decisions." Also not subject to deprecatory characterization as "bias" or "prejudice" are opinions held by judges as a result of what they learned in earlier proceedings. It has long been regarded as normal and proper for a judge to sit in the same case upon its remand, and to sit in successive trials involving the same defendant.[45]

Appellant did introduce new evidence, but unfortunately for him, the evidence was aggravating, rather than mitigating, and prompted the trial judge impose a harsher punishment.

The present case was clearly not an instance in which the trial court punished the defendant for filing an appeal and obtaining a reversal in the case. Rather, this case clearly presents a situation in which the trial judge imposed a greater punishment because he heard new, aggravating evidence in the form of the defendant's denial of responsibility for the various offenses he committed.

Because I believe that Appellant's presumption-of-vindictiveness claim was not preserved and because I believe any presumption was rebutted, I would grant the State's first and third grounds for review. Because the Court does not, I respectfully dissent.

Filed: June 23, 2021

Publish

---

[45] *Liteky v. United States*, 510 U.S. 540, 550-51 (1994).