**Don WHATLEY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 154–95.**

Court of Criminal Appeals of Texas, En Banc.

May 14, 1997.

---

Roy E. Greenwood, Austin, for appellant.

David P. Weeks, District Attorney, Huntsville, Matthew Paul, State's Atty., Austin, for State.

## *OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW*

KELLER, Judge.

A jury convicted appellant of solicitation of capital murder[1] and assessed punishment at forty years confinement. A deadly weapon special issue was submitted, the jury answered the issue affirmatively, and the trial court entered a deadly weapon finding. The Court of Appeals affirmed. We granted review to consider the propriety of the court of appeals' disposition of the following issues: (1) whether the State's notice of intent to seek a deadly weapon finding, the special issue submitted to the jury, and the trial court's judgment are defective for failing to designate a specific physical object as the alleged deadly weapon, and (2) whether a deadly weapon finding is authorized for an inchoate offense where the deadly weapons are exhibited only to accomplices to the offense.[2] We will affirm.

## I.

We dispense with a recitation of the facts except as they are relevant to the issues before us. The indictment in the instant cause did not allege the use or exhibition of a weapon. Before trial, the State gave the appellant written notice of its intent to seek an affirmative finding, but this notice merely alleged the "use of a deadly weapon" without further elaboration. Likewise, the special issue and the judgment merely referred to a "deadly weapon." Appellant objected to the submission of the special issue on the ground that the deadly weapons involved in the case did not facilitate the solicitation; he made no objection at any time to the State's failure to specify the type of deadly weapon involved. In fact, in response to an inquiry by the trial court, defense counsel stated that he had no problem with the wording of the deadly weapon special issue.

The evidence at trial shows that appellant wanted his ex-wife's current husband dead. On November 1, 1991, appellant hired Williamson and Williams to kill the husband. At a later date, the two accomplices returned to meet appellant to pick up a handgun. When asked at trial what was the purpose in returning to appellant's hometown, Williamson stated that it was "To pick up a gun that he had to use in the job." Similarly, Williams said, "Yes, we went back to pick up a revolver from him, the gun that was supposed to be used." The evidence also shows that appellant later gave the men a shotgun because it would be much easier to hit their target with a shotgun than with the handgun.

The Court of Appeals, relying upon *Hubbard v. State*, 809 S.W.2d 316 (Tex.App.—Fort Worth 1991), *reversed in part on other grounds*, 892 S.W.2d 909 (Tex.Crim.App. 1995), held that the State's notice was sufficient and that appellant had claimed no surprise or prejudice. The court further held that the law does not require the trial court's

---

1. The offense is defined in Texas Penal Code § 15.03(a) as follows:

   A person commits an offense if, with intent that a capital felony ... be committed, he requests, commands, or attempts to induce another to engage in specific conduct that, under the circumstances surrounding his conduct as the actor believes them to be, would constitute the felony or make the other a party to its commission.

2. These were appellant's grounds for review two and four, but for ease of discussion we will refer to them as appellant's first and second grounds for review respectively.

judgment to indicate the specific weapon used. With regard to the authorization for the finding, the court noted our statement that "*all* felonies are theoretically susceptible to an affirmative finding of use or exhibition of a deadly weapon," *Patterson v. State,* 769 S.W.2d 938, 940 (Tex.Crim.App.1989), and concluded that the felony of solicitation of capital murder is no exception. The Court of Appeals held that the shotgun and handgun were used in the offense because the weapons were given to Williamson and Williams during the course of the solicitation. We now turn to the grounds raised by appellant.

## II.

### A.

Appellant complains that the State's notice, the special issue, and the trial court's judgment fail to specify the type of deadly weapon involved. Although appellant failed to object to the generality of the notice and the special issue, he contends that his case is governed by *Ex parte Patterson,* 740 S.W.2d 766 (Tex.Crim.App.1987). In *Ex parte Patterson,* we held that a complete lack of notice of the intent to seek a deadly weapon finding is fundamental error and causes egregious harm—relieving the defendant of the necessity of objecting at any stage of the trial— because the defendant is "given no prior indication that the nature of the weapon used was to be a particular issue in the case, with additional consequences vis-a-vis his liberty." *Id.* at 777. However, in the present case, the State's "general" notice did inform appellant that "the nature of the weapon used" would be an issue at trial and that appellant's parole eligibility could be restricted as a result. Appellant's case does not fall within the rule announced in *Ex parte Patterson.*

■ In addition to relying upon *Ex parte Patterson,* appellant analogizes to indictment law to argue that the failure to specify the type of deadly weapon denies him due process by depriving him of notice and preventing him from mounting an effective defense. But, we believe appellant's failure to request such specificity defeats any due process claim that might otherwise exist. The Supreme Court has held that, in some situations, a

defendant's due process rights are not violated absent a timely request for relief. *Gray v. Netherland,* 518 U.S. ——, —— – ——, 116 S.Ct. 2074, 2083–2085, 135 L.Ed.2d 457, 474–475 (1996); *Greer v. Miller,* 483 U.S. 756, 766 n. 8, 107 S.Ct. 3102, 3109 n. 8, 97 L.Ed.2d 618 (1987). In *Gray,* the defendant claimed that he was denied due process because the State gave only one day's notice of the evidence it planned to use to substantiate its charges against him. 518 U.S. at ——, 116 S.Ct. at 2083, 135 L.Ed.2d at 473. The Supreme Court held that, even if the defendant's notice of evidence claim could ever constitute a due process violation, it did not in fact constitute a due process violation in that case because the defendant did not request a continuance, which would have remedied any prejudice he suffered. *Id.* at —— – ——, 116 S.Ct. at 2083–2085, 135 L.Ed.2d at 474–475. In *Greer,* the Court addressed whether due process was violated when a prosecutor asked a question designed to elicit impermissible evidence of postarrest silence (after *Miranda* warnings were given) but the trial court refused to permit an answer. 483 U.S. at 765–766, 107 S.Ct. at 3108–3109. The existence of a due process violation depended upon whether the trial was rendered "fundamentally unfair" by merely asking the question. *Id.* The Supreme Court held that the trial was not rendered fundamentally unfair because the trial court gave curative instructions. *Id.* at 766, 107 S.Ct. at 3109. The defendant claimed that the curative instructions were not specific enough, but the Court found such claim to be without merit because defense counsel did not request additional instructions. *Id.* at 766 n. 8, 107 S.Ct. at 3109 n. 8.

In both *Gray* and *Greer,* the defendant was in a position to request a remedy for his perceived problem. By contrast, a person in the position of the defendant in *Ex parte Patterson* could be completely blindsided: he may have no idea that an issue even exists concerning the use of a deadly weapon because the State has failed to give *any* notice of its intent to seek a deadly weapon finding. The present case is like *Gray* and *Greer* and unlike *Ex parte Patterson.* Appellant was not blindsided—he was notified that the use of a deadly weapon was an issue in the case,

and he could have, but did not, request additional specificity. In the absence of a request, we see no fundamental unfairness in failing to specify the type of weapon involved.

As for the claim that the judgment is defective, we see nothing in Article 42.12 of the Code of Criminal Procedure to require the judgment to denote the specific type of weapon involved. *See* Article 42.12 § 3g(a)(2).[3] Appellant relies on *Turner v. State*, 664 S.W.2d 86 (Tex.Crim.App.1983). In *Turner*, the judgment contained only a general reference to "a deadly weapon." *Id.* at 88. But, the trial court also made two separate findings of deadly weapons: (1) hands and fists, and (2) a stick. *Id.* The trial court expressly ordered the former finding to be incorporated into the judgment but made no such order for the latter finding. *Id.* We held that the evidence was insufficient to support "hands and fists" as deadly weapons and that the general reference in the judgment to a deadly weapon could not be construed to include the stick. *Id.* at 90. *Turner* stands for the proposition that the express inclusion of specifically named items as deadly weapons results in the exclusion of other items not specifically mentioned.[4] In the present case, *no* items were specifically named as deadly weapons in the judgment.

Appellant further argues that, absent a designation of the specific weapon, the jury's finding cannot be subjected to appellate review for sufficiency purposes. We disagree. An appellate court may examine the record to determine whether there is sufficient evidence to support the use of any object as a deadly weapon in the case. We overrule appellant's first ground for review.

### B.

We next turn to appellant's complaint that a deadly weapon finding is not authorized for the offense of solicitation. As the court of appeals stated, our decision in *Patterson v. State* recognized that all felonies are theoretically susceptible to an affirmative finding on the use or exhibition of a deadly weapon. Further, we have held that *Patterson v. State* "construed the phrase 'used or exhibited a deadly weapon' by opening it to the broadest possible understanding in [the] context of which it was reasonably susceptible in ordinary English." *Tyra v. State*, 897 S.W.2d 796, 797 (Tex.Crim.App.1995). Any employment of a deadly weapon qualifies if it "facilitates the associated felony," *Id. Patterson v. State*, 769 S.W.2d at 941, or its use, in itself, fulfills an element of the offense on trial, *Tyra*, 897 S.W.2d at 798.

We see no reason to exclude the offense of solicitation from felonies susceptible to a deadly weapon finding. The offense of solicitation penalizes someone who "requests, commands, or attempts to induce" the commission of certain offenses.[5] Texas Penal Code § 15.03(a). Certainly, if a defendant pointed a gun at another person and commanded that person to engage in conduct constituting a capital or first degree felony, that defendant would have "used or exhibited" a deadly weapon during the offense of solicitation. This same reasoning applies to a "request" or an "attempt to induce" except that the use of a weapon is merely persuasive rather than coercive. The persuasive impact of the weapon may be a part of the request or the attempt to induce conduct by strengthening those elements of the solicitation. The offense need not be based upon words alone. Hence, merely exhibiting a deadly weapon to an accomplice during a solicitation transaction may be sufficient to support a deadly weapon finding—especially where, as in the present case, the weapons were deadly weapons per se.[6]

---

**3.** The Code does require the judgment to designate the deadly weapon as a firearm if there is a finding that the deadly weapon was a firearm. § 3g(a)(2). Even though the evidence in the present case shows that the deadly weapons used were in fact firearms, the deadly weapon finding made in this case did not specify that the deadly weapon was a firearm.

**4.** Another difference in *Turner* is that the defendant objected that he had not been notified concerning the use of a deadly weapon.

**5.** All three theories were contained in the jury charge in this case.

**6.** In his brief before this Court, appellant argued that the solicitation was already complete before the weapons were provided. But, appellant did not raise this claim in his brief to the Court of

Accordingly, appellant's second ground for review is overruled.

The judgments of the courts below are AFFIRMED.

OVERSTREET, J., dissents.

WOMACK, Judge, concurring.

I join the opinion of the Court.

I write to point out an amphiboly that can arise when judges say an offense was "complete." One sense of "complete" is "having all its parts, not lacking anything"; another is "finished." *Oxford American Dictionary* 129 (1980). In the former sense, an offense is complete—legally complete—as soon as each element has been committed. But that does not mean that the offense is finished as a matter of fact.

For example, if an actor has notice that entry onto property is forbidden and knows he does not have the consent of the owner, a criminal trespass is legally complete the instant the actor enters the property. But the offense is not factually complete until the actor leaves the property.

When we are trying to decide whether an offense was complete, we must know whether we mean legally complete or factually complete. The confusion of these different meanings of "complete" can lead to incorrect decisions.

Article 42.12, § 3g(a)(2) of the Code of Criminal Procedure requires it to be shown that a deadly weapon was used or exhibited "during the commission of a felony offense."[1] The decision whether the use or exhibition of a deadly weapon occurred during the commission of the offense is a factual one. The weapon must have been used or exhibited before the offense was factually complete, that is, before it was finished. Whether the offense was legally complete (because each of the elements had been committed) before the weapon was used, is not the issue.

If the hypothetical trespasser entered the property without a deadly weapon and picked up one to use as he trespassed, he would have used a deadly weapon during the commission of the offense, although its use did not begin before the offense was legally complete.

Whatley's offense may have been legally complete if he committed each element of the solicitation offense at his first meeting with Williamson and Williams, but that does not mean the offense was factually finished at that time. He was still requesting, commanding, or attempting to induce them to commit the murder when he introduced the handgun into the offense. The affirmative finding was supported by the evidence.

BAIRD, Judge, concurring and dissenting.

I concur in the majority's treatment of the first ground for review. *Ante*, at 74–76.[1] However, for the following reasons, I dissent to the majority's treatment of appellant's second ground for review. *Ante*, at 76–77.[2]

Appeals. Instead, his only argument before that court was that a deadly weapon finding could not apply to the offense of solicitation where the deadly weapon was exhibited only to accomplices to the offense. Therefore, the *timing* of appellant's use or exhibition of deadly weapons is not properly before us, and we express no opinion on the matter.

Judge Baird contends that we should address the timing issue because of some language in the Court of Appeals' opinion. While a Court of Appeals may, in its discretion, address errors not briefed before it, *Rezac v. State*, 782 S.W.2d 869, 870 (Tex.Crim.App.1990), there is no indication that the Court of Appeals intended such an exercise in the present case. That court did not state that it was addressing unassigned error nor does its opinion indicate in any fashion that it believed the timing of appellant's use or exhibition of deadly weapons to be an issue in the case.

Moreover, even if the Court of Appeals had addressed the issue, appellant did not raise the timing issue in his petition for discretionary review before this Court.

1. Or during immediate flight therefrom. Flight is not involved in this case.

1. Appellant's first ground for review asks:

Can an affirmative finding of a "deadly weapon" be made, where neither the indictment, nor the State's subsequent written "notice," nor the special issue instruction, ever designate any *specific physical object* as *the alleged* "deadly weapon" in the case?

2. Appellant's second ground for review asks:

In the prosecution for an inchoate offense, such as solicitation of murder, under Tex. Penal

## I.

The majority holds the mere exhibition of a deadly weapon to an accomplice during a solicitation transaction may be sufficient to support a deadly weapon finding for the offense of solicitation. Ante, at 77. However, the majority does not apply that holding to the facts of the instant case. Instead the majority uses a footnote to hold the issue is not before us because it was not raised in the Court of Appeals, addressed by the Court of Appeals, or raised by appellant in his petition for discretionary review. Ante, at 76–77, n. 6. If the footnote is correct, the second ground for review should be dismissed as improvidently granted because it does not impact the decision of the Court of Appeals. See, Tex.R.App.P. 200 (Court of Criminal Appeals reviews "decisions" of the courts of appeals.) Consequently, the majority's discussion of the second ground for review is nothing more than obiter dictum.

However, contrary to footnote 6, the issue was addressed by the Court of Appeals. Specifically, the State, in responding to the points of error challenging the deadly weapon finding, relied on Patterson v. State, 769 S.W.2d 938, 941 (Tex.Cr.App.1989), contending: "In order to 'exhibit' a deadly weapon it need only be consciously displayed during the commission of the required felony offense." State's brief on direct appeal, pg. 7.[3] The Court of Appeals agreed and held: "A shotgun and handgun were given to Williamson and Williams in the course of the solicitation." Whatley v. State, slip op. pg. 10, 1994 WL 699077 (Tex.App.—Houston [14 Dist.] 1994). Therefore, the second ground for review does impact the decision of the Court of Appeals. Accordingly, the majority should apply its holding to the instant case and decide if appellant used or exhibited a deadly weapon during the commission of the solicitation or in immediate flight therefrom.

Code Ann. § 15.03, is the "use or exhibition" of a deadly weapon allowable, where no eventual *attempt* to "use" weapons against the complaining witness was ever made, and where the *only* place that weapons were "exhibited" was between appellant and his accomplices during the solicitation transaction?

3. All emphasis is supplied unless otherwise indicated.

## II.

### A.

Most offenses are complete when each of their elements have occurred. Barnes v. State, 824 S.W.2d 560, 562 (Tex.Cr.App.1991)(citing United States v. Smith, 740 F.2d 734, at 736 (9th Cir.1984)). However, some offenses are "continuing in nature." To determine whether an offense is continuing we utilize the rationale employed by the United States Supreme Court in Toussie v. United States, 397 U.S. 112, 115, 90 S.Ct. 858, 860, 25 L.Ed.2d 156 (1970), where the Court stated:

> ... the doctrine of continuing offenses should be applied in only limited circumstances ... such a result should not be reached *unless the explicit language of the substantive criminal statute compels such a conclusion or the nature of the crime is such that Congress must assuredly have intended that it be treated as a continuing one.*

In Barnes, the State contended theft should be treated as a continuing offense. Id., 824 S.W.2d at 561. Specifically, the State asked us to construe the statute so that every day a defendant exercised control over stolen property would constitute a separate offense. We refused because the explicit language of the statute did *not* compel such a conclusion and the nature of the offense was *not* such that the legislature must have intended for theft to be treated as a continuing offense. Id., at 562 (citing Toussie). Such a judicial construction would have usurped "the authority of the legislature in an area controlled exclusively by it." Ibid.[4]

### B.

Appellant was convicted of solicitation of capital murder pursuant to Tex. Penal Code Ann. § 15.03, which provides:

4. In Barnes we noted the Legislature explicitly designated the offense of Engaging in Organized Criminal Activity, Tex. Penal Code § 71.03(4), as a continuing offense. Barnes, 824 S.W.2d at 562. Cf., Lawhorn v. State, 898 S.W.2d 886, 889–890 (Tex.Cr.App.1995)(Legislature did *not* intend for escape statute to be construed as a continuing offense.).

A person commits an offense if, with *intent* that a capital felony or felony of the first degree be committed, he requests, commands, or attempts to *induce another* to engage in specific conduct that, under the circumstances surrounding his conduct as the actor believes them to be, would constitute the felony or make the other a party to its commission.

The legislature has not designated § 15.03 as a continuing offense. Therefore, the offense of solicitation is *complete* when the defendant has *intent* and acts to *induce* another to engage in felonious conduct. *State v. Brinkley*, 764 S.W.2d 913, 915 (Tex.App.—Tyler 1989); *and, Majid v. State*, 713 S.W.2d 405, 407–408 (Tex.App.—El Paso 1986).

### III.

#### A.

Because solicitation is not a continuing offense, for an affirmative finding to be appropriate, the State must prove either the use or exhibition of a deadly weapon during the commission of the offense or in the immediate flight therefrom. Art. 42.12, § 3g(a)(2). In *Patterson v. State*, 769 S.W.2d 938, 940–941 (Tex.Cr.App.1989), we held a deadly weapon finding is appropriate if a deadly weapon is used or exhibited to facilitate the commission of the charged offense. *Id.*, at 940. We explained:

> ... [U]sed ... a deadly weapon *during* the commission of the offense means that the deadly weapon was employed or utilized in order to achieve its purpose. ... [and] exhibited a deadly weapon means that the weapon was consciously shown or displayed *during* the commission of the offense.

*Id.*, at 941 (internal quotations omitted). In other words, it is impossible for the deadly weapon to be used or exhibited in a manner to facilitate an already *completed* offense. Therefore, in the instant case, if the appellant did not use or exhibit a deadly weapon *during* the commission of the solicitation or in immediate flight therefrom, a deadly weapon finding is not authorized.

#### B.

The record established that on November 1, 1991, appellant met his accomplices, paid them $700.00 on a murder contract, and gave them a photograph of the intended victim and a map. Appellant had the *intent* to have the victim murdered and used money to *induce* his accomplices to carry out the murder. During this meeting each of the elements of solicitation occurred; therefore, the offense was *complete*. However, appellant did *not* use or exhibit a deadly weapon during the November 1, 1991, meeting or in immediate flight therefrom.

*After* the solicitation was *complete*, two additional meetings occurred. On November 4, 1991, appellant met and gave the accomplices a handgun. On December 11, 1991, appellant met with one of the accomplices and gave him a shotgun. Only at these *subsequent* meetings is there evidence of a deadly weapon. Because the solicitation was *complete* before appellant provided the firearms, a deadly weapon finding is not authorized.

Accordingly, I dissent to the resolution of appellant's second ground for review.