**Kozeen SEARCY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 10–01–289–CR.**

Court of Appeals of Texas, Waco.

July 23, 2003.

Daniel Burkeen, Groesbeck, for Appellant.

Robert W. Gage, Freestone County District Attorney, Fairfield, for Appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

REX D. DAVIS, Chief Justice.

A jury convicted Kozeen Searcy of unlawful possession of a firearm by a felon. The court sentenced him to four years' imprisonment. Searcy argues in two points that: 1) the court erred in making a deadly weapon finding because this issue was not submitted to the jury; and 2) the record contains legally insufficient evidence to support the deadly weapon finding.

### TRIAL COURT'S AUTHORITY TO MAKE DEADLY WEAPON FINDING

Searcy argues in his first point that the court erred in making a deadly

weapon finding because this issue was not submitted to the jury.

In a jury trial, the State can obtain a deadly weapon finding in one of three manners: (1) if the indictment specifically alleges the accused used or exhibited a deadly weapon and the jury finds the defendant guilty as charged; (2) if the indictment alleges the use or exhibition of a deadly weapon by design and the jury finds the accused guilty as charged; or (3) if the jury provides an affirmative response to a special issue concerning the defendant's use or exhibition of a deadly weapon.

*Davis v. State,* 897 S.W.2d 791, 793 (Tex. Crim.App.1995); *Polk v. State,* 693 S.W.2d 391, 394 (Tex.Crim.App.1985); *Rachuig v. State,* 972 S.W.2d 170, 178 (Tex.App.-Waco 1998, pet. ref'd).

■ When a jury has convicted the defendant but he elects to have the court assess punishment, the court has the authority to make an affirmative deadly weapon finding on its own if the evidence supports such a finding. *Fann v. State,* 702 S.W.2d 602, 604 (Tex.Crim.App.1986) (opinion on reh'g); *Adams v. State,* 40 S.W.3d 142, 146 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd). The court may do so regardless of whether the State reoffers the evidence admitted during the guilt-innocence phase. *Adams,* 40 S.W.3d at 146; *see also* TEX.CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (Vernon Supp.2003) (trier of fact may consider "the circumstances of the offense" in assessing punishment).

Searcy elected to have the court assess his punishment. Thus, the court had the authority to make a deadly weapon finding. *Fann,* 702 S.W.2d at 604; *Adams,* 40 S.W.3d at 146. Accordingly, we overrule Searcy's first point.

## LEGAL SUFFICIENCY

■ Searcy contends in his second point that the record contains legally insufficient evidence to support the deadly weapon finding because his mere possession of a firearm did not facilitate the commission of an associated felony. The State responds that the evidence is sufficient to show that Searcy "exhibited" the weapon.

### STANDARD OF REVIEW

■ A traditional legal sufficiency review "measures evidentiary sufficiency against the 'substantive elements of the criminal offense as defined by state law.' " *Fuller v. State,* 73 S.W.3d 250, 252 (Tex. Crim.App.2002) (quoting *Jackson v. Virginia,* 443 U.S. 307, 324 n. 16, 99 S.Ct. 2781, 2792 n. 16, 61 L.Ed.2d 560, 577 n. 16 (1979)). Admittedly, a defendant's use or exhibition of a deadly weapon does not always constitute "a substantive element" of the offense. *Cf.* TEX. PEN.CODE ANN. § 29.03(a)(2) (Vernon 1994) (person commits aggravated robbery if he "uses or exhibits a deadly weapon" during the commission of a robbery).

■ Nevertheless, this Court and others frequently review the legal sufficiency of the evidence to support such a finding. *E.g., Dowdle v. State,* 11 S.W.3d 233, 237–38 (Tex.Crim.App.2000); *Gale v. State,* 998 S.W.2d 221, 225 (Tex.Crim.App.1999); *Nickerson v. State,* 69 S.W.3d 661, 669–70 (Tex.App.-Waco 2002, pet. ref'd); *Bailey v. State,* 46 S.W.3d 487, 489 (Tex.App.-Corpus Christi 2001, pet. ref'd). In reviewing a claim of legal insufficiency with regard to a deadly weapon finding, we view the evidence in a light most favorable to the finding and determine whether any rational trier of fact could have found beyond a reasonable doubt that the defendant used or exhibited a deadly weapon. *See Gale,* 998 S.W.2d at 225; *Nickerson,* 69 S.W.3d at 670.

## "Use" or "Exhibit"

Article 42.12, section 3g of the Code of Criminal Procedure authorizes the entry of a deadly weapon finding if it is shown that the defendant "used or exhibited [a deadly weapon] during the commission of a felony offense or during immediate flight therefrom." Tex.Code Crim. Proc. Ann. art. 42.12, § 3g(a)(2) (Vernon Supp.2003).

The term "use" "refers certainly to the wielding of a firearm with effect, but it extends as well to *any* employment of a deadly weapon, even its simple possession, if such possession facilitates the associated felony." *Patterson v. State,* 723 S.W.2d 308, 315 (Tex.App.-Austin 1987), *aff'd,* 769 S.W.2d 938 (Tex.Crim.App.1989); *accord Dowdle,* 11 S.W.3d at 237.

Following *Patterson,* the Court of Criminal Appeals held in a case in which the defendant had been convicted of unlawful possession of a firearm by a convicted felon that "in order to 'use' a deadly weapon for affirmative finding purposes, the weapon must be utilized to achieve an intended result, namely, the commission of a felony offense separate and distinct from 'mere' possession." *Ex parte Petty,* 833 S.W.2d 145, 145 (Tex.Crim.App.1992); *accord Narron v. State,* 835 S.W.2d 642, 644 (Tex.Crim.App.1992) (reaching same result in case involving possession of prohibited weapon conviction).

Regarding the exhibition of a deadly weapon, the Court stated in *Patterson,* "'[E]xhibit' only requires that a deadly weapon be consciously shown, displayed, or presented to be viewed during 'the commission of a felony offense or during immediate flight therefrom.'" 769 S.W.2d at 941.

As the Court later observed, "We ... consulted a highly regarded lexicon of the English language [1] for information about the [terms 'use' and 'exhibit']." *Tyra v. State,* 897 S.W.2d 796, 797 (Tex. Crim.App.1995) (citing *Patterson,* 769 S.W.2d at 941). The Court has construed the terms "use" and "exhibit" "by opening [them] to the broadest possible understanding in context of which ... was reasonably susceptible in ordinary English." *Id.* (citing *Vernon v. State,* 841 S.W.2d 407, 409–10 (Tex.Crim.App.1992)); [2] *accord Whatley v. State,* 946 S.W.2d 73, 76 (Tex. Crim.App.1997).

Following this example, we turn to *Webster's* to define the terms "show," "display," and "present." "Show" means among other things: "to cause or permit to be seen: EXHIBIT"; "to reveal by one's condition, nature, or behavior"; and "to point out: direct attention to." *Merriam–Webster's Collegiate Dictionary* 1085 (10th ed., 1993). "Display" means among other things: "to put or spread before the view" and "to make evident." *Id.* at 335. "Present" means among other things: "to offer to view: SHOW" and "to bring to one's attention." *Id.* at 921.

---

1. The "highly regarded lexicon of the English language" was *Webster's New International Dictionary. See Patterson v. State,* 769 S.W.2d 938, 940–41 (Tex.Crim.App.1989) (quoting *Webster's New International Dictionary of the English Language* 796, 2523–24 (3d ed., 1976)).

2. As the Court observed in *Vernon:*
   Words not specially defined by the Legislature are to be understood as ordinary usage allows, and jurors may thus freely read statutory language to have any meaning which is acceptable in common parlance. Accordingly, when determining the sufficiency of evidence to support a jury verdict, reviewing courts must not employ definitions of relevant statutory words which are different or more restrictive than the jurors themselves were legally entitled to use.
   *Vernon v. State,* 841 S.W.2d 407, 409 (Tex. Crim.App.1992).

The Court of Criminal Appeals has explained that a person need not actually "threaten" another with a weapon before a deadly weapon finding can be made.

[I]f a defendant pointed a gun at another person and commanded that person to engage in conduct constituting a capital or first degree felony, that defendant would have "used or exhibited" a deadly weapon during the offense of solicitation. This same reasoning applies to a "request" or an "attempt to induce" except that the use of a weapon is merely persuasive rather than coercive. The persuasive impact of the weapon may be a part of the request or the attempt to induce conduct by strengthening those elements of the solicitation. The offense need not be based upon words alone. Hence, merely exhibiting a deadly weapon to an accomplice during a solicitation transaction may be sufficient to support a deadly weapon finding—especially where, as in the present case, the weapons were deadly weapons per se.

*Whatley*, 946 S.W.2d at 76. Accordingly, a defendant's "persuasive" or "coercive" handling of a weapon can constitute the "use" or "exhibition" of that weapon.

### APPLICATION

Viewed in a light most favorable to the challenged finding, the evidence reflects that Sheila Talton and Searcy (her live-in boyfriend) got into a heated argument. Searcy "pushed [her] around a little bit." Talton feared for her safety and dialed 9–1–1 without Searcy's knowledge. She threw the phone receiver down so the operator could hear the "screaming and hollering."

She then ran out of the house and stood in the front yard. After Searcy realized that she had called the police, he came outside on the porch holding a sock at his side with a handgun in it. Searcy did not threaten Talton with the gun or point it at her. According to Talton, Searcy "was just wanting [her] to get back in the house." She recognized that a gun was inside the sock from the outline. Searcy held the top of the sock, not the gun. As the police arrived, Searcy retreated inside the house.

When the police arrived, Talton "kept stating … 'He's got a gun.' 'He's got a gun.'" She was "excited" as she did so. The police later found the gun in a sock underneath a floorboard in the kitchen.

To summarize, Searcy confronted Talton with a gun at his side. He "wanted" her to come back inside. Based on her comments to the police, it appears that she was agitated by the fact that Searcy held the weapon at his side. From this evidence, a rational trier of fact could find that Searcy "showed" Talton the weapon by holding it in a manner which "reveal[ed] [its] condition [or] nature"; that he "displayed" the weapon by holding it in a manner which "ma[de] [it] evident"; and that he "presented" the weapon by "bring[ing] [it] to [Talton]'s attention." *Merriam–Webster's Collegiate Dictionary* at 335, 921, 1085.

The fact that Searcy did not point the weapon at Talton is not dispositive. Based on the circumstances surrounding Searcy's and Talton's confrontation, a rational trier of fact could find that Searcy "exhibited" the handgun in a "persuasive" manner. *See Whatley*, 946 S.W.2d at 76.

Accordingly, we hold that the evidence is legally sufficient to support the court's finding that Searcy "exhibited" a deadly weapon during the commission of the offense. Thus, we overrule Searcy's second point.

We affirm the judgment.