

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0164-22

**DARREN TRAMELL HUGHES, Appellant**

**v.**

**THE STATE OF TEXAS**

## ON STATE'S PETITION FOR DISCRETIONARY REVIEW
## FROM THE FOURTEENTH COURT OF APPEALS
## HARRIS COUNTY

KELLER, P.J., filed a dissenting opinion in which KEEL and SLAUGHTER, JJ., joined.

The Court concludes that Appellant did not forfeit his due-process by claim failing to object. In doing so, the Court treats this case the same as one in which the defendant is completely absent from the proceedings. But Appellant was not completely absent—he was present via electronic video-conferencing and in fact participated in his trial. I would hold that this was at most a partial infringement on his right to be present and that he was required to object to preserve his claim.

## I. BACKGROUND

**A. Trial -Level Proceedings**

Concerned that Appellant had been exposed to COVID-19 and might have tested positive for it,[1] the trial court required that Appellant participate in his adjudication and sentencing hearing via Zoom video-conferencing from the county jail. Appellant's attorney was physically present in the courtroom.

The State read the forgery allegation, and Appellant pled "false" to it.[2] Several times during the adjudication hearing, Appellant interrupted witnesses and interrupted the trial court itself, and the court ordered him muted when he did so. For instance, during cross-examination of the detective who arrested Appellant, Appellant interrupted, "And you drew your gun on me, man. You pulled your gun on me, man. You lying, man. You drew a gun on me, man. Hey –." The trial court responded, "Mute the defendant. Do not let him leave. He is in court."

Appellant interrupted proceedings during cross-examination of the State's first witness, during direct examination of the State's second witness, during cross-examination of the State's second witness, during redirect examination of the State's second witness, and during the trial court's remarks after closing arguments. He was muted each time. In addition, at the close of testimony and twice during closing arguments, the trial court admonished Appellant to be quiet without muting him. From the fact that Appellant was muted several times, it is evident that each time he was muted, it was only temporary.

Appellant testified on his own behalf. He denied that he forged checks but claimed that he

---

[1] Later, during his testimony, Appellant conceded that he had been told that he had tested positive.

[2] The trial court asked him to plead "true" or "false."

received them from someone else. At the conclusion of the hearing, the trial court adjudicated Appellant's guilt and sentenced him to ten years in prison.

Defense counsel then noted some *pro se* motions drafted by Appellant, and the trial court explained it would not rule on those motions since Appellant was represented by counsel. Defense counsel expressed agreement, and the trial court said, "All right. Thank you, sir." Then Appellant said, "I want to appeal. And I objected to this hearing last time you gave it. So you still did it anyway. I want to appeal." The trial court responded, "Stop. Please mute him. Thank you. He's disruptive." Then the hearing concluded.

Nothing in the court reporter's record or the clerk's record reveals an objection to requiring Appellant to participate remotely by video-conferencing.

## B. Appeal

The court of appeals found that trial court violated Appellant's constitutional right to be present and that this right was not forfeited by a failure to object.[3] The court of appeals declined to make a blanket statement that presence via video-conferencing was constitutionally insufficient but concluded that it was insufficient in Appellant's case because the trial judge muted Appellant several times, and from those occurrences, the appellate court inferred that Appellant could not confer with his attorney.[4] Conducting a constitutional harm analysis, the court of appeals determined that it could not conclude beyond a reasonable doubt that the error did not contribute to the trial court's judgment revoking Appellant's community supervision.[5]

---

[3] *Hughes v. State*, 651 S.W.3d 461, 470 (Tex. App.—Houston [14th Dist.] 2022).

[4] *See id.* at 470 & n.5.

[5] *Id.* at 471.

Justice Wise dissented.[6] Among other things, he took issue with the court's conclusion that Appellant had no possibility to communicate with his counsel in private.[7] Justice Wise said that the burden of producing a record showing a confrontation violation was on Appellant and that nothing in the record established that he met that burden by showing that he lacked the opportunity to consult with counsel.[8] The dissent concluded that, even if Appellant was muted, that did not mean he was prevented from speaking with his attorney, "either through typed messages or a separate [digital] breakout room."[9]

## II. ANALYSIS

Preservation of error is a systemic requirement that a court of appeals must address, even if not raised by the parties.[10] And even when a preservation issue is not addressed by the court of appeals, this Court "can and should do so when confronted with a preservation question."[11] Although the State argues that the correct preservation framework depends on whether Appellant's right to be present was rooted in the Confrontation Clause or the Due Process Clause, I conclude that it does not matter which constitutional right is implicated in this case. Regardless of the constitutional source of the right to presence at issue here, the type of constitutional "presence" claim before us is one that must be preserved by a trial objection.

---

[6] *Id.* at 471-74 (Wise, J., dissenting).

[7] *Id.* at 472.

[8] *Id.* at 472-73.

[9] *Id.* at 473.

[10] *Ex parte Nuncio*, 662 S.W.3d 903, 913 (Tex. Crim. App. 2022).

[11] *Id.*

Under our *Marin* jurisprudence, "[a]ll but the most fundamental rights are thought to be forfeited if not insisted upon by the party to whom they belong."[12]  And the Supreme Court has recognized that "once a defendant has the assistance of counsel[,] the vast array of trial decisions, strategic and tactical, which must be made before and during trial rests with the accused and his attorney."[13] So, when confronted with a novel issue of whether a particular claim must be preserved, we should start with the general rule that a claim is forfeited by a failure to object.  The constitutional rights of confrontation and due process are not exceptions to that principle.  Our Court has generally stated that the right to confrontation is "subject to procedural default."[14]  We have likewise generally stated that "[d]ue process challenges can be forfeited by failure to object in the trial court."[15]  A conclusion that a right falling within one of those categories is not forfeited by a failure to object must turn, not on the constitutional source of the claim, but on the aspect of the trial process the claim involves.

At common law, the right to be present at the beginning of trial in a felony case was unwaivable.[16]  Once trial had begun, a defendant could waive his right by voluntarily absenting himself from the proceedings[17] or by acting in a disruptive manner that impeded the trial after being

---

[12]  *Marin v. State*, 851 S.W.2d 275, 279 (Tex. Crim. App. 1993).

[13]  *Estelle v. Williams*, 425 U.S. 501, 512 (1976).

[14]  *Anderson v. State*, 301 S.W.3d 276, 280 (Tex. Crim. App. 2009).

[15]  *Garcia v. State*, 663 S.W.3d 92, 95 (Tex. Crim. App. 2022).

[16]  *Crosby v. United States*, 506 U.S. 255, 259 (1993).

[17]  *Id.* at 259, 261 (The defendant's voluntary absenting of himself after trial had begun was considered to be a knowing waiver of his continued presence.).

warned that he would be removed if he continued his disruptive behavior.[18] Those rules were later

codified at the federal level in Federal Rule of Criminal Procedure 43,[19] and in *Crosby v. United*

*States*, the Supreme Court held that "the trial in absentia of a defendant who is not present at the

beginning of trial" was absolutely prohibited.[20] But in *United States v. Gagnon*, when the defendant

was present at trial with his attorney but was absent from an in-chambers conference, the Supreme

Court held that an objection was required to preserve a right-to-presence claim under Rule 43.[21] And

in a later case, when explaining that "[t]he most basic rights of criminal defendants" can be forfeited

by the failure to object, *Gagnon* was the first case the Court cited for that proposition.[22] These

Supreme Court cases suggest that there is a significant difference between being completely absent

from trial and being only partially absent.

In the due process arena, when dealing with the right to notice, our Court has similarly drawn

a distinction between the complete lack of notice and a partial lack of notice. In *Ex parte Patterson*,

we held that the complete absence of notice of the State's intent to seek a deadly weapon finding

---

[18] *Illinois v. Allen*, 397 U.S. 337, 343 (1970) (The defendant could lose his right to be present "if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom.").

[19] FED. R. CRIM. P. 43(c); ADV. COMM. NOTES, FED. R. CRIM. P. 43, cmt. 2 and cmt. on 1974 amend.; *Crosby*, 506 U.S. at 258-61.

[20] *Crosby*, *supra* at 262.

[21] 470 U.S. 522, 527-28 (1985) ("We disagree with the Court of Appeals that failure to object is irrelevant to whether a defendant has voluntarily absented himself under Rule 43 from an in camera conference of which he is aware. . . . A defendant knowing of such a discussion must assert whatever right he may have under Rule 43 to be present.").

[22] *Peretz v. United States*, 501 U.S. 923, 936 (1991) (citing *Gagnon* for the proposition that "absence of objection constitutes waiver of right to be present at all stages of criminal trial").

until the issue was submitted in the jury charge was fundamental error, requiring reversal even absent an objection.[23] But in *Whatley v. State*, when the claim was that the deadly-weapon notice was not specific enough, this Court held that there was no due-process violation absent an objection.[24] This Court distinguished *Patterson* as involving a defendant who was "blindsided" by the complete lack of notice, while the defendant in *Whatley* at least had notice that there would be a deadly-weapon issue and could have requested additional specificity.[25]

*Garcia*, the right-to-interpreter case relied upon by the court of appeals, involved a situation analogous to a defendant's complete absence from trial. In that case, the defendant had difficulty understanding the English language and was not given an interpreter.[26] Although a member of the defense team was bilingual, this Court said that the case involved "no interpreter" rather than an "ineffective interpreter" because the bilingual individual did not in fact act as an interpreter at the trial.[27] We held that, once he was aware that the defendant needed an interpreter, a trial judge had a duty to ensure that one was provided, regardless of whether the defense requested one.[28] A person who sits in "total incomprehension" of his trial[29] might as well not have been there. But that is not like what happened in Appellant's case.

---

[23] 740 S.W.2d 766, 776-78 (Tex. Crim. App. 1987).

[24] 946 S.W.2d 73, 75-76 (Tex. Crim. App. 1997).

[25] *Id.* at 75.

[26] *Garcia*, 149 S.W.3d 135, 145-46 (Tex. Crim. App. 2004).

[27] *Id.* at 142-43.

[28] *Id.* at 145.

[29] *See id.* at 146.

It is beyond dispute that Appellant's situation was different from that of a defendant who is wholly absent from the proceedings. A defendant who is wholly absent, as envisioned by *Crosby*, does not get to watch the proceedings as they are occurring or participate in any way. By contrast, Appellant watched the entire proceedings, and he participated in substantial ways by pleading to the motion-to-adjudicate and testifying. And while the defendant in *Garcia* did not understand the testimony of the complaining witness,[30] Appellant was under no such disability and was in a position to respond to the State's witnesses during his own testimony. It is true that Appellant was not physically present for any of the proceedings, and that does make his case factually different from *Gagnon*. But this case appears to me to be far closer to *Gagnon* than it is to *Crosby* or *Garcia*. In fact, in some ways, Appellant's position was better than Gagnon's: Gagnon did not watch all of the proceedings, but Appellant did.

When the right to be present first developed at common law, there was no possibility of viewing and participating in proceedings remotely. The defendant was either physically present at trial, or he was absent. Given that technology has affected a defendant's constitutional rights by allowing for the possibility of witnesses testifying via video-conference,[31] it stands to reason that it could affect constitutional rights with respect to the defendant's own presence at trial. The fact that the right to physical presence itself can be denied under certain circumstances where non-physical presence is available at least opens the possibility that the requirement for preserving a right to physical presence may also be affected.

Moreover, treating a person who is present by video-conference as completely absent under

---

[30] *Id.* at 145.

[31] *See e.g. Maryland v. Craig*, 497 U.S. 836 (1990).

the common law creates anomalous results. It would mean that the common law would absolutely forbid presence by videoconference at the beginning of trial. So even if all the parties agreed to trial by video-conference, the defendant would have to come into the courtroom at the beginning of trial, leave, and then participate via video-conference. A common-law rule of that sort would seem irrational, but at least the legislature could overturn it. If such a rule were deemed to be a constitutional imperative, though, the legislature would be stuck with it, a result that seems absurd.

The absurdity flows at least partly from the fact that a defendant's complete absence from trial is different in kind from his physical absence but presence via video-conference. When a defendant simply walks out of a courtroom and does not return in the middle of a trial, the law considers that a bad outcome but tolerates it because of the interest of continuing a trial that has already started.[32] In fact, part of the reason for finding that a defendant who absents himself during trial waives his right to presence is to discourage the defendant from "gambling on an acquittal knowing that he can terminate the trial if it seems that the verdict will go against him."[33] The same concerns do not arise when a defendant participates in a trial via video-conference.

The court of appeals seems to have recognized as much when it declined to make a blanket holding that a defendant is "not present" for constitutional purposes if he is present via video-conferencing. Nevertheless, that court found a constitutional violation because the trial judge muted Appellant several times, leading the court to conclude that Appellant was not given the opportunity

---

[32] *Crosby*, 506 U.S. at 261 ("As a general matter, the costs of suspending a proceeding already under way will be greater than the cost of postponing a trial not yet begun. If a clear line is to be drawn marking the point at which the costs of delay are likely to outweigh the interests of the defendant and society in having the defendant present, the commencement of trial is at least a plausible place at which to draw that line.").

[33] *Id.* at 262.

to consult with counsel. But it does not follow from the fact that Appellant was muted at times that he was deprived of the ability to interact with counsel. Justice Wise was correct in concluding that this was speculation on the part of the court. Appellant interrupted witnesses during testimony and interrupted the trial judge during his comments, and the trial judge had the authority to enforce courtroom decorum. It simply does not follow from the muting of some of Appellant's public comments, that Appellant was denied the opportunity to consult with counsel privately. It is entirely possible that Appellant was sending written electronic communications to defense counsel or that he had the ability to do so, whether or not he chose to exercise it. Nothing in the record shows otherwise.

More importantly, if defense counsel believed that muting Appellant was problematic, he could have objected to it, and if he and Appellant were not in fact given the ability to communicate with each other, defense counsel could have complained about that. And if Appellant believes that his attorney should have objected on one of these bases, Appellant can raise an ineffective-assistance claim in a habeas proceeding and produce evidence about the communication setup at trial and about what actually happened.[34] Even if it were shown that the trial judge improperly limited Appellant's ability to interact with counsel, that does not equate to a total denial of the right to be present. As the record makes clear, Appellant's participation in the trial was substantial—he pled to the motion to adjudicate, watched the State's witnesses testify, and testified himself after hearing their testimony. Appellant did not suffer a total denial of his right to be present. At worst, his right to be present was infringed upon, and he forfeited a complaint about that infringement by failing to raise

---

[34] *See Strickland v. Washington*, 466 U.S. 668, 686 (1984) (recognizing that the right to counsel includes the right to the effective assistance of counsel).

it.[35]

I would reverse the judgment of the court of appeals and remand the case for it to address

Appellant's remaining issue. I respectfully dissent.

Filed: May 22, 2024
Publish

---

[35] I recognize that *Lira v. State* said that various statutes "support[] the conclusion that a defendant has a substantive right to personal presence that must be waived before a trial court is authorized to proceed remotely." 666 S.W.3d 498, 512-13 (Tex. Crim. App. 2023). But Appellant did not rely upon statutory authority for his complaint, and the court of appeals analyzed only the constitutional right to be present. And whether a right to be present is based on a constitutional or statutory source affects the applicable harm analysis. Here, the court of appeals applied the more lenient "beyond a reasonable doubt" harm analysis applicable to constitutional errors.